. No. 27,725.

PAUL R. NAGLE, as Executor, etc., *Appellant*, v. JOHN DAVISON et al.,
*Appellees*.

(257 Pac. 962.)

### SYLLABUS BY THE COURT.

1. WILLS—*Title of Devisee to Rents and Profits.* Unless the will itself otherwise provides the devisee of lands is entitled to the rents and profits and the full, free and unrestricted use of them, except as provided in R. S. 22-502, from the date the will is probated until they are sold under an order of the court for the payment of debts and legacies.

2. EXECUTORS AND ADMINISTRATORS—*Assets — Rents and Profits — Payment of Taxes.* Where lands that have to be sold under an order of court to pay debts and legacies of the testator are occupied by the devisee, the rents and profits arising therefrom, except as provided in R. S. 22-502, do not belong to the executor, even for the purpose of paying the current taxes on the land.

Appeal from Stafford district court; RAY H. BEALS, judge. Opinion filed July 9, 1927. Affirmed.

*Paul R. Nagle* and *Arthur R. Gates,* both of St. John, for the appellant.

*Robert Garvin, Evart Garvin* and *Wm. Davison,* all of St. John, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.:   This is an action by Paul R. Nagle, executor of the estate of N. Davison, deceased, against three sons of the deceased, who are residuary devisees under the will, for a declaratory judgment as to the ownership of one-third of the wheat crop growing upon certain lands in Stafford county devised under the residuary clause of the will. The residuary devisees answered admitting there was an actual controversy as to the usual landlord's share of the wheat crop, but denying any right of the executor thereto, claiming to own the entire crop themselves as devisees of the land upon which it was growing. The court made numerous findings of fact and rendered judgment for the defendants, from which the plaintiff, the executor, appeals.

N. Davison, owner of the land involved, died August 24, 1926, leaving a will directing the payment of his debts, making a specific

Executors and Administrators, 23 C. J. pp. 1136 n. 87, 1137 n. 88. 1139 n. 4, 1140 n. 6; 24 C. J. pp. 294 n. 93, 544 n. 60.  Wills, 40 Cyc. p. 1995 n. 27; 28 R. C. L. 239.

legacy to his wife and another to his daughter, then designating these three sons as residuary devisees of all the rest and remainder of his estate, real, personal and mixed. The will was probated on August 30, 1926. Inventory and appraisement were made of all the property at once, and it was found that the land was heavily mortgaged, so that the mortgages, other debts and specific legacies exceeded the appraised value of all the property. On November 29, 1926, the probate court granted the plaintiff an order to sell the real estate to pay the debts and legacies. In the meantime, after the death of the father, the sons sowed about 600 acres of the land devised to them to wheat and the executor offered with the land the usual landlord's share, or one-third of the growing wheat. There was no lease made by the executor, but he showed and the court found that one-third of the crop was the usual share of the landlord in that vicinity. The defendants do not question the right of the executor to sell the land and all of it if necessary to pay the debts and legacies, but do claim they are and have been the owners of the land since the death of their father and have the right as such owners to the rents and profits thereof until it is sold by the executor. This was the sole question submitted to the trial court, and both parties wanted a declaratory judgment as to the ownership of one-third of this growing wheat crop. The conclusions reached by the trial court were that the three residuary devisees under the will became the owners of the land immediately upon the death of their father and the probate of his will, and as such had the right to all the rents and profits of the land until it might be sold by the executor under order of court to pay debts of the estate and legacies provided for in the will. We see no error in this conclusion. The rule was announced in the case of *Reading v. Wier,* 29 Kan. 429, as follows:

"The lands of an intestate descend to the heirs, subject in certain contingencies to the payment of the debts of the intestate. The legal title is in the heirs, and the administrator takes no interest in the real estate, but possesses a naked authority to sell it on license to pay the debts where the personal estate is insufficient." (p. 430.)

It was restated shortly after in the case of *Head v. Sutton,* 31 Kan. 616, 3 Pac. 280, as follows:

"The rents and profits of the realty of an intestate belong, as against the administrator, to the heirs of the intestate." (Syl. ¶ 2.)

There is no difference in this respect between the rights of an heir

.of an intestate and a devisee under a will, the rule applying to both alike. The reason for the rule is apparent, because no one knows how much of the real estate, if any, may be needed for the payment of debts and legacies until the sale is made, and the owners would be reckless and negligent if they failed to exercise an ownership over such property and use it or collect the rents and profits therefrom between the time of the probate of the will and the date of the sale. The rule is quite universal and maintains in most of the other states, and is concisely stated in 23 C. J. 1139:

"The rents, profits and income of a decedent's real property accruing before his death vest in the personal representative as assets; but those accruing after his death are not assets, but vest in the heir or devisee, even though the rent was expressly reserved to the lessor, his executors, administrators, and assigns; and the fact that the land was sold to pay debts does not deprive the heirs or devisees of their right to rents which accrued between the time of decedent's death and the time of the sale."

Since the conclusion of the trial in the district court a stipulation has been filed attempting to submit in a rather unusual way an additional question as to the payment of taxes by the executor on the land involved and the question as to his right to recover the amount so paid. The stipulation couples this tax question with the claim for one-third of the growing wheat crop as if the wheat might be taken to pay taxes that should have been paid by the owners of the land. We can see no connection between these matters. The executor has the right to pay taxes on land devised when he may need it to pay debts and legacies just the same as he should pay insurance on buildings to protect creditors and charge such expense to the estate, or if he had not already paid them he could sell the real estate subject to the taxes the same as he sells it subject to the mortgage thereon.

"The question in this case is whether it is the duty of the administrator to pay the taxes accumulating on the lands of his intestate subsequent to the death of the intestate. We think not, except when he sells the land. If the administrator needs the lands of the estate with which to pay debts, it is as much his duty to pay all legal charges that may accrue thereon until he sells them, as it is to pay any charges on personal property for the care, preservation and protection of the same while it remains in his custody." (*Reading v. Wier*, 29 Kan. 429.)

We see no error in the conclusion of the trial court.

The judgment is affirmed.