No. 31,590

MAYME MILLER, as Executrix, etc., and as an Individual and Sole Devisee of the Estate of T. E. Miller, Deceased, *Appellee*, v. J. L. HENDERSON, JR., *Appellant.*

(33 P. 2d 1098.)

Opinion filed July 7, 1934.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *Getto McDonald,* all of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith* and *C. H. Morris,* all of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover specific real estate, or the value thereof, growing out of an alleged abuse of a confidential relation.

Plaintiff brought the action in a triple capacity, as executrix of her deceased husband's will, individually and as sole devisee under the will.

The petition on which the action was tried, among other things, alleged that T. E. Miller died testate on March 14, 1927, owning a one-half interest in an oil and gas lease on described real estate on which there were four producing oil wells, and the necessary equipment to operate the same, and at that time defendant Henderson owned the other undivided one-half, and that Miller and Henderson were jointly engaged as cotenants and mining partners in producing oil from said leasehold estate; that the will of decedent provided:

"I now own, jointly with J. L. Henderson, Jr., certain oil and gas leases, oil-producing property, equipment used in connection therewith, and in the

event of my death prior to the time that such business matters are closed up and the property disposed of, it is my desire and will that said J. L. Henderson, Jr., shall take over and have full management and control of all of said jointly owned property, and with the approval and consent of the executrix of this will, shall have the power to sell and dispose of all or any part of said property; that he shall manage and operate the same and sell and dispose of said property, with the consent of said executrix, in such manner and at such times as he may deem for the best interest of himself and of my estate, and that he shall account for and pay over to said executrix the proceeds of the operation and sale of said property from time to time as the same accrue."

That the will was admitted to probate, and defendant Henderson from that time to October 10, 1928, operated the leasehold property and accounted to plaintiff as executrix for her share, having full knowledge of the terms of the will and acting in the nature of a trustee for the benefit of the plaintiff; that plaintiff is a woman unskilled in business or in oil and gas matters and relied upon defendant Henderson to handle the joint properties, and that in all matters set forth she relied upon and had full confidence in the acts and actions of defendant Henderson; that on October 10, 1928, the Miller interest in the lease was levied upon and sold by the United States for payment of an assessment for income taxes, and that defendant Henderson, in violation of his trust, bid in the property and caused a conveyance thereof to be made to defendant Holden, who was alleged to be a partner of defendant Henderson; that Henderson paid to the United States for the property a sum less than $1,320; that plaintiff was present when the sale was held and desired to protect the property, but was informed by Henderson that she could not purchase by giving a check, but would have to have actual cash and, relying upon and having full confidence in Henderson, she did not bid, but permitted defendant Henderson to bid, believing a reconveyance would be made to her; that at that time the property had a fair and reasonable market value of $25,000, and had it not been for the action of defendants she would have bid in the property and protected it; that since the sale defendants have refused to recognize her rights in and to the property, and claim they own the property to the exclusion of any rights of the plaintiff therein; that on October 9, 1929, she tendered Henderson $1,320 and demanded a reconveyance, which was refused, and she made an offer to tender into court the above or any other sum the court should require to reimburse defendants. A second cause of action was directed to a recovery of subsequent profits. The prayer

was for reconveyance of a one-half interest, subject to payment of amounts due to defendants, or in lieu thereof for the value thereof alleged to be $25,000, and for an accounting.

We need not notice defendant Holden's answer, for no judgment was rendered against him, and he is not a party to this appeal.

Defendant Henderson's answer admitted certain parts of the petition as to Miller's death, and the ownership of the lease, but denied any fiduciary relationship toward Miller or the plaintiffs, denied that he ever was a partner of Miller, or of Holden, or that he and Holden own or hold any interest in the lease as partners. He also set up the sale by the United States and his purchase thereat for $1,100; that he did not buy for himself but for defendant Holden, and that on December 3, 1928, he assigned to Holden the interest so purchased by him; that neither he nor Holden were in anywise interested in the federal income tax assessed against Miller and had no part in and did not procure the collector of internal revenue to buy or sell the leasehold interest which was sold at public auction to the highest bidder; that said collector advertised said property for sale as personal property and so sold the same; that plaintiffs were present at the sale and made no objection, never brought any action to set the sale aside, that it was valid and binding; that plaintiffs are guilty of laches in commencing their action; that the sale was held October 10, 1928, and the action commenced October 8, 1930, and that the reasonable value of the property at the time the same was sold was approximately the amount for which it was sold.

The trial court made findings of fact, which need not be set out in full, but are summarized as follows: The lease in question was originally acquired by Miller, who conveyed a half-interest to Henderson; they drilled five wells in 1922, four of which were producers. Miller and Henderson operated the lease until Miller's death and Henderson and plaintiffs operated it thereafter until October 10, 1928. In 1926 Miller was badly injured and died six months later. During his disability Henderson consulted with the plaintiff concerning the property and continued such consultation and advice after Miller's death.

"Mrs. Miller relied upon and had full confidence in the honesty, integrity and ability of the said defendant, J. L. Henderson, Jr., and relied upon and followed his advice and suggestions in her transactions relating to the lease in question."

That the Miller interest was sold by the United States for satisfaction of unpaid income tax; that Mrs. Miller attended the sale and had a conversation with defendant Henderson and Mr. Moll, assistant internal revenue collector, who conducted the sale, in which she was advised she would have to have cash, and a draft on the estate or on her attorney would not be accepted and that the money could not be paid the next day; Mrs. Miller was ready, able and willing to bid and pay an amount in excess of the amount bid, but relying on the representations made, she made no bid, and the property was bid in by Henderson, who was permitted to give his check for the amount of his bid; that on October 10, 1928, the lease had a value of $12,000 and the sale of the Miller interest for $1,100 was for an inadequate price; that the operation of the lease from date of the sale to date of the trial produced a total net production of $12,497.87 at an expense of $7,192.46, and that from February to October, 1928, the value of oil sold was $4,597, or an average of over $500 per month. There are also findings as to assignment of Miller's interest to a trustee during his lifetime as security for debts, and an appointment of the same trustee by the probate court after his death, and who continued to collect oil runs due until the sale October 10, 1928. The court found that subsequent to the sale Henderson assigned a one-half interest, which he purchased at the sale, to defendant Holden, the assignment having been recorded on December 11, 1928. The court concluded as a matter of law that Henderson and Miller were mining partners, and that the partnership was not dissolved by Miller's death, but continued and was in effect on October 10, 1928, and that the relationship of mining partners is the same as that of general partners, one of mutual trust and confidence, and each partner is held to strict rules of good faith, honesty and fair dealing, and that the actions of Henderson in stating or permitting statements to be made in his presence to Mrs. Miller to the effect she could not bid on the property without having actual cash with her, when he knew this to be untrue, were in violation of the rule requiring good faith between partners; that the sale price was for an inadequate sum, and in violation of the rule requiring good faith; that defendant Henderson having parted with the title cannot be compelled to reconvey and a money judgment should be rendered, and that the judgment should be for $6,000, less amount paid, $1,100, or a total of $4,900. On a motion of defendant to set aside certain findings and to enter others, the court reduced

the value of the lease to $10,000, and ordered that judgment be rendered for $5,000, less the amount paid of $1,100, or a total of $3,900. Defendant's motion for a new trial was overruled and he appeals, urging especially the question whether there was a mining partnership and, if so, was one of the partners competent, in the absence of fraud, to purchase his copartner's interest at a tax sale, and was a fraud perpetrated, and the question whether the judgment was excessive.

Although the trial court found as a matter of law that a mining partnership existed, as we view the matter, whether its conclusion is correct or not, does not affect the ultimate result as expressed in the judgment. (*Saylor v. Crooker*, 97 Kan. 624, 156 Pac. 737; *Quinton v. Kendall*, 122 Kan. 814, 253 Pac. 600.) The real question is whether a confidential relation existed between Mrs. Miller and the appellant, and whether the court's finding of fact that after Miller's injury Henderson consulted and advised with the plaintiff concerning the properties in which they were jointly interested and continued such consultations and advice after Miller's death, and that Mrs. Miller relied upon and had full confidence in the honesty, integrity and ability of defendant Henderson and relied upon and followed his advice and suggestions in her transactions relating to the lease in question, is supported by competent evidence. There was conflicting evidence on the subject, but the trial court having found in favor of the plaintiff, we need review the matter no further than to see that there is support in the evidence for the finding. It was shown that the lease was acquired and developed; that Henderson and Miller jointly paid the expenses of operation; that by mutual agreement the share going to Henderson was paid separately to him; that in 1922 Miller was in financial difficulty and made an assignment of his share to a trustee, who was, after Miller's death, appointed by the probate court as a trustee for the Miller interest to collect the oil runs, pay necessary expenses and account to the executrix; that prior to Miller's death the trustee paid the expenses for both defendant and Miller, defendant paying his share to the trustee who had practically looked after the lease. After Miller's death and until the sale, the pumper on the lease had purchased the small materials, which was all that was purchased in the last years, and the trustee paid the bills. Defendant stated he had known Miller for twenty-five years and had been in deals with him, but he denied any partnership although they carried a firm

name for convenience. After Miller's death there was a conference between the parties and the trustee respecting the appointment of the trustee by the probate court. After the injury to Miller his wife talked with defendant about the lease in question and other property in which the two were interested. At the conference after Miller's death the provision of the will quoted above was discussed, and the arrangement made to have the trustee appointed to continue operation of the lease. After the sale by the United States was advertised, plaintiff called defendant and talked with him and asked him what she could do about it and he told her she could bid. She attended the sale, which was conducted by Mr. Moll, deputy revenue collector. Defendant came over to where plaintiff was and asked her if she were going to bid and she asked him why he wanted to know and he answered he wanted to know who his partner was. Mr. Moll approached and asked if she were Mrs. Miller and if she intended to bid and if she understood the terms of the sale, and said, "You understand you must have the cash in hand"; that defendant stood by and heard the conversation; that she told Moll he could draw a draft on the estate or on her attorney or could go to the attorney's office and complete the deal the next day, and Moll said she could not do that, she must have the cash; that she didn't have the cash and therefore did not bid; that the sale was held immediately after the conversation and defendant bid in the property for $1,100, for which he gave his check, no cash being then used; that almost a year later she tendered defendant the amount of his bid with interest. Plaintiff further testified that on account of the course of dealings which she and her husband had had with defendant she had confidence in him, sought advice from him and believed what he told her. She also testified that on the day of the sale the estate was in funds in the bank to pay her bid on the lease, but she did not have any cash with her. After the sale was had the trustee paid her the share of oil runs due to the estate in the amount of about $1,700. It is not intended by the above to give a complete statement of the course of dealings nor of defendant's version from which a contrary conclusion might be reached, but only to show that there was ample evidence to justify the trial court in finding that a confidential relationship existed.

In *Lindholm v. Nelson*, 125 Kan. 223, 264 Pac. 50, the third paragraph of the syllabus reads:

"A fiduciary relation does not depend upon some technical relation created

by, or defined in, law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." (Syl. ¶ 3.)

And in the opinion it was said:

"The courts have consistently refused to give an exact definition to, or to fix definite boundaries of, that class of human relations which, by principles of common honesty, require fair dealing between the parties, and which is commonly known as fiduciary relations." (p. 232. See authorities cited in support.)

As has been stated, whether the trial court's conclusion of law that there was a mining partnership was right or wrong, is immaterial. Its finding that a fiduciary or confidential relationship existed is sustained by competent evidence. As we see the matter, it is likewise of no moment that Henderson now says he bought for Holden. He could not do for Holden what he could not do for himself. The result that must follow is plain, the injured party must be restored to his or her rights in the premises.

Complaint is made that the court's finding as to the value of the lease is not supported by the evidence. It would extend this opinion to too great a length to review all the testimony. There was a dispute; plaintiff produced witnesses who valued the leasehold as high as $15,000, while defendant produced witnesses who valued it as low as $1,200, said to be its salvage and only value. Defendant himself valued it at $2,500. The above was opinion evidence. To be considered in connection with it was testimony offered by the defendant that in the period from the sale on October 10, 1928, to the time of the trial in January, 1933, a period of about fifty months, the lessees' share from sales was $12,497.87 at an expense of $7,192.-46, leaving a profit of $5,305.41, and that for a period of about seventeen months just preceding the sale the share paid the estate was over $1,700. The court's finding was based on substantial testimony.

The court made no specific finding as to laches, but it appears that the action was brought within the statutory period. In addition, there was no showing whatever that defendant was in any manner prejudiced by any delay there may have been. (*City of Hutchinson v. Hutchinson*, 92 Kan. 518, 141 Pac. 589; 1 C. J. 1153; 21 C. J. 221; 10 R. C. L. 396.)

In the trial below the plaintiff did not seek to have the sale by the United States set aside, but contended that defendant Hender-

son could not, under the circumstances, purchase to her injury, and that if he could not reconvey the property to her upon being made whole, that he should then pay her the value of what she lost by reason of his conduct. Paraphrasing what was said in *Lindholm v. Nelson,* supra, we may say: Courts of equity are not required to close their eyes to a transaction of this character. It was not error for the court to render the judgment it did. Plaintiffs get what rightfully belongs to them and defendant loses only the profits of an unconscionable transaction.

The judgment of the lower court is affirmed.