No. 53,381

VARENA E. BROWN, *Plaintiff-Appellant/Cross-Appellee,* v. GENE FOULKS, JUDITH FOULKS, and N.E. FOULKS, INC., *Defendants-Appellees/Cross-Appellants.*

(657 P.2d 501)

Opinion filed January 14, 1983.

*Ken W. Strobel,* of Williams, Larson, Voss, Strobel & Estes, of Dodge City, argued the cause, and *Max Eugene Estes,* of the same firm, was with him on the briefs for the appellant.

*Jack E. Dalton,* of Mangan, Dalton & Trenkle, Chartered, of Dodge City, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action in equity for an accounting and for judgment for any sums found to be due. Plaintiff is VaRena E. Brown, widow of W.A. (Bill) Brown. The defendants are Judith Foulks, plaintiff's daughter; Gene Foulks, husband of Judith Foulks; and Foulks Pipe, Inc., a Nebraska corporation, wholly owned by Gene and Judith Foulks.

Following the completion of discovery, the case was submitted to the court on a stipulation of fact, the discovery depositions of the parties and witnesses, and certain exhibits. The facts in the case are not really in dispute and essentially are as follows: W.A.

(Bill) Brown was the husband of plaintiff, VaRena Brown, and the father of defendant Judith Foulks. In the early 1950's, Bill Brown started a business at Dodge City known as W.A. Brown Enterprises. It was a sole proprietorship, engaged in the sale to well drillers of irrigation pipe, both perforated and nonperforated, and also related well-drilling supplies. VaRena did not participate in the business in any way.. Prior to 1964, Gene Foulks was teaching school in Nebraska. Bill Brown, thinking about his eventual retirement, expressed the wish that Gene and Judith would move back to Dodge City, so that Gene Foulks could learn the business and eventually take it over. After several discussions, Gene and Judith Foulks moved to Dodge City in 1964. Gene Foulks immediately went to work for Brown Enterprises to learn the business.

During 1967, Bill Brown had discussions with his attorney regarding a plan to dispose of the business in such a way as to accomplish two objectives: Furnish VaRena a retirement income for the rest of her life and, at the same time, vest the family business in Gene and Judith Foulks on Bill's death. The matter was discussed by the Browns and Foulks and culminated in an agreement dated December 27, 1967, executed by VaRena Brown, Gene Foulks, and Judith Foulks. Simply stated, this agreement provided as follows:

(1) Upon the death of Bill Brown and the receipt of benefits of a life insurance policy in the amount of $22,000 owned by Foulks on the life of Bill Brown, VaRena would convey all of her interest in W.A. Brown Enterprises, including all inventory and equipment, goodwill, and accounts receivable, but not the land or buildings, to Gene and Judith Foulks.

(2) In addition, Foulks would pay VaRena the total sum of $45,000 over a period of years.

(3) As further consideration for the transfer, VaRena was to receive a stated percentage of the gross sales of W.A. Brown Enterprises, and/or successors, for the remainder of her life.

(4) The conveyance should be construed as a sale, and VaRena would have no managing interest in the business.

(5) Foulks would lease the building and land for a period of not less than five years for $200 per month plus a percentage of gross sales.

At the time this agreement was signed, the business of Brown

Enterprises was that of a wholesale distributor of irrigation pipes, casings, and supplies. The business bought the supplies and sold them to the well driller, who ultimately sold the supplies to the customer of the well driller. The trade area of Brown Enterprises included Kansas, Nebraska, Colorado, the Texas panhandle, and Montana. Prior to the death of Bill Brown, the business continued along with Bill in complete charge until 1970, when Bill Brown and one E.P. Ernst invented and patented a machine that would perforate pipe. The perforation machine was installed in the business for use in Dodge City. From 1970 on, the business changed from a simple wholesale pipe distributorship to the manufacturer of a product—perforated pipe.

This development of the pipe perforator led to a codicil to Bill Brown's will. That codicil directed that VaRena be granted a life estate in the perforation machine and that the machine be leased to Gene and Judith with a royalty of 10¢ per foot of pipe perforated to be paid to VaRena. In the event VaRena predeceased Bill Brown or on her death, the machine was bequeathed in equal shares to Judith and Gene. Bill Brown died December 21, 1971. Immediately upon his death, Gene Foulks took over and began managing the business. During the period of administration of Bill's estate, VaRena, although serving as executrix, left all business decisions to Gene Foulks, who took care of everything related to the business. In December of 1972, by order of the probate court, the assets and ownership of the business were transferred to VaRena Brown.

Shortly thereafter, pursuant to the agreement of December 1967, VaRena conveyed the business to Gene Foulks who accepted ownership of the physical assets of Brown Enterprises. From December 1972 until October of 1974, Gene Foulks conducted the business in accordance with the terms and conditions of the agreement. During this period of time, VaRena received the life insurance proceeds, rental on the land and buildings, her agreed percentage of the gross sales, and royalties from the perforation machine, all pursuant to the December 1967 agreement. The business prospered under Gene's management. In 1973, the business had total sales in the amount of approximately $2,032,000. VaRena received $14,444 for perforation royalties. The total payments to VaRena for the year 1973 amounted to

approximately $53,900. In 1974, things got even better. That year total sales of the business amounted to $3,692,000. From December 1972 until October 1974, the nature of the business remained basically the same as it had been prior to Bill's death. Then trouble arose. Gene and Judith became dissatisfied with the arrangement and approached VaRena about selling the land to them. Early in 1974, Gene began making overtures to change the percentage of gross sales to be paid to VaRena. Gene's accountant attempted to negotiate a new agreement; these negotiations were unsuccessful. VaRena decided to stick to the original agreement in accordance with Bill Brown's wishes.

On October 15, 1974, Gene Foulks formed Foulks Pipe, Inc., a Nebraska corporation. The incorporators and sole stockholders were Gene and Judith Foulks. Gene was president and Judith was secretary of the corporation. Judith Foulks, in a conversation with her mother, admitted that part of the intention of forming the Nebraska corporation was so that Gene and Judith could avoid having to pay VaRena the percentage of gross sales that she was entitled to under the terms of the 1967 agreement. The Nebraska corporation was incorporated without Gene saying anything to VaRena. VaRena found out about the Nebraska corporation only after she asked Judith why Gene was spending so much time in Nebraska.

From this time on, the business of the Nebraska corporation expanded, while that of W.A. Brown Enterprises decreased. In 1975, the gross sales of W.A. Brown Enterprises decreased to $1,487,558, and in 1976 it dropped to $1,460,574. The Nebraska corporation enjoyed gross sales of $1,563,991 in 1975, and $2,242,246 in 1976. The combined gross sales of W.A. Brown Enterprises and Foulks Pipe, Inc. amounted to $3,051,549 in 1975, and $3,702,820 in 1976. During this same period, the amount of pipe perforated at W.A. Brown Enterprises at Dodge City substantially decreased. For the calendar years 1975 and 1976, the percentage payments received by VaRena under the 1967 agreement did not include any percentage of the gross sales recorded by the Nebraska corporation. The effect was to reduce her payments for those two years to less than one-half of the amount she had received for the two years prior to the establishment of the Nebraska corporation.

In January 1977, VaRena Brown commenced this action seek-

ing an accounting of the gross sales of the two businesses and for judgment for her percentage of the gross sales figures reflected by the accounting. The books, records, and finances of W.A. Brown Enterprises and Foulks Pipe, Inc., were audited by accountants employed by both sides. Plaintiff commissioned the firm of Elmer Fox, Westheimer & Company to review the exhibits and records and to render a special report on the transactions of the two companies. From the stipulations, discovery depositions, and the numerous exhibits submitted into evidence, the management of the two businesses was brought into sharp focus and clearly established the following undisputed facts.

(1) W.A. Brown Enterprises and Foulks Pipe, Inc., are essentially the same type of business. Both manufacture perforated irrigation pipe and both sell perforated and nonperforated irrigation pipe and accessories to well drillers.

(2) Following the creation of the Nebraska corporation, Gene Foulks contacted the customers of W.A. Brown Enterprises personally and by telephone. He told them of his new Nebraska business. During 1975 and 1976, Foulks Pipe, Inc., sold pipe to 32 firms who previously were the customers of W.A. Brown Enterprises. During those two years, approximately 86% of the total sales of the Nebraska corporation were to those former customers of Brown Enterprises.

(3) Six former employees of W.A. Brown Enterprises became employees of Foulks Pipe, Inc.

(4) Numerous invoices show that Gene Foulks carried on business as N.E. Foulks, d/b/a W.A. Brown Enterprises, or Foulks Pipe, Inc. Some materials were sold to Brown Enterprises, shipped to Foulks Pipe, Inc., and paid for by Brown Enterprises. Brown Enterprises's trucks were used to haul pipe belonging to Foulks Pipe, Inc., and vice versa. Pipe belonging to both Foulks Pipe, Inc., and Brown Enterprises was stored on the premises in Dodge City and also in Nebraska. There are no documents to show which company owns which pipe in the inventories at both facilities.

(5) The business loans of both W.A. Brown Enterprises and Foulks Pipe, Inc., were handled through the books of Brown Enterprises. Gene Foulks used joint financial statements, invoices, and accounts receivable for the purpose of providing collateral for money he borrowed to operate both companies and

all of those loans for both businesses were handled on the books of Brown Enterprises. Brown Enterprises is listed in Dunn & Bradstreet; Foulks Pipe, Inc., is not so listed. The credit and reputation of Brown Enterprises was used to make purchases for both businesses.

(6) After Foulks Pipe, Inc., was set up. in October 1974, approximately $69,000 worth of assets were transferred from Brown Enterprises in Dodge City to the Foulks Pipe, Inc., place of business in Nebraska.

(7) After he took over the business, Gene Foulks developed a new pipe perforating machine at the Brown Enterprises premises in Dodge City. The cost in salaries of Brown employees was about $14,000. This new perforator was depreciated on the books of W.A. Brown Enterprises through the year 1978, even though it had never been used in Dodge City and has been exclusively used by Foulks Pipe, Inc., in Nebraska. Foulks now has three such machines in Nebraska.

(8) With all of the various transactions for the purchase of equipment and inventory, there has never been any transfer of money or an accounting back and forth for materials and services provided by Brown Enterprises to Foulks Pipe, Inc., or vice versa. Both companies use the same bookkeeper who is located in Dodge City. In differentiating between the two companies, Gene Foulks testified in his deposition that both companies sell essentially the same products to the same customers; that both companies manufacture perforated pipe which differs somewhat in the way the perforation is done and the size of the pipe. Foulks testified that the two businesses are in direct competition to a certain extent; each sells a product and they compete with each other. He compared their operation to that of Dillons North and South which are divisions of a well-known grocery chain in Kansas.

(9) Gene Foulks is the manager of both enterprises; he makes all decisions as to their operations.

Following submission of the case for decision to the trial court, the court found in favor of defendants on plaintiff's claim for a percentage of the gross sales of the Nebraska corporation. The court, in substance, concluded that Brown Enterprises and Foulks Pipe, Inc., were separate and distinct businesses. It held that the 1967 agreement was clear and unambiguous and con-

tained no express covenants or restrictions prohibiting Gene and Judith Foulks from setting up a new corporation in competition with Brown Enterprises. The court found no evidence of fraud, bad faith, or overreaching on the part of Gene and Judith Foulks. The court held that plaintiff was entitled only to an accounting for pipe stored in Dodge City and later sold by Foulks and pipe stored in Nebraska and subsequently sold by Brown. Such sales were to be treated as part of the gross sales of Brown. The plaintiff appealed from the judgment of the court which denied her the right to the contract percentage on *all* the gross sales of the Nebraska corporation. Defendants filed a cross-appeal on that portion of the judgment which held plaintiff was entitled to the contract percentage on sales of Foulks Pipe, Inc., involving pipe perforated by W.A. Brown Enterprises at Dodge City and later sold by Foulks Pipe, Inc., in Nebraska.

A number of points are raised by both parties on the appeal. The primary questions for consideration, however, involve the nature of the duty which defendants owed to plaintiff and whether defendants breached that duty. The primary issue in the case as raised by the parties is whether a fiduciary relationship existed between the Foulks and VaRena Brown by virtue of the December 27, 1967, agreement, and, if so, whether the Foulks breached that fiduciary relationship. In determining this issue it would be helpful to consider some of the general principles of law pertaining to fiduciary relationships. It has been said that a general definition of the term "fiduciary" which is sufficiently comprehensive to embrace all cases cannot well be given. 36A C.J.S., Fiduciary, p. 381. The term connotes the idea of trust or confidence, contemplates good faith, rather than legal obligation as the basis of the transaction; refers to the integrity, the fidelity of the party trusted, rather than his credit or ability. It has been held to include those informal relations which exist whenever one party trusts and relies on another, as well as technical fiduciary relations. *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509 (1942).

It is difficult to define the term "fiduciary relation." It may be defined generally as a relation in which, if a wrong arises, the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the cestui que trust. The term "fiduciary relation" has reference to any

relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party. In *Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235 (1982), it was held that whether or not a confidential or fiduciary relationship exists depends on the facts and circumstances of each individual case. This court has refused, for that reason, to give an exact definition to fiduciary relations. It was stated that a fiduciary relationship does not exist upon some technical relation created by, or defined in, law. It may exist under a variety of circumstances and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. *Lindholm v. Nelson,* 125 Kan. 223, Syl. ¶ 3, 264 Pac. 50 (1928). In *Lindholm,* it was stated that courts have consistently refused to give an exact definition to, or to fix definite boundaries of, that class of human relations which, by principles of common honesty, require fair dealing between the parties, and which is commonly known as fiduciary relations.

. The Kansas reports contain many cases where a fiduciary relation has been found to exist between the parties. A fiduciary relationship may exist between partners in an oil and gas lease, *More v. Burroughs,* 111 Kan. 28, 205 Pac. 1029 (1922), or between the widow of a deceased partner and the surviving partner in a lease. *Miller v. Henderson,* 140 Kan. 46, 33 P.2d 1098 (1934). Such a relationship may exist between joint adventurers in a business enterprise. *Paul v. Smith,* 191 Kan. 163, 380 P.2d 421 (1963). It has been held that a life tenant with power to sell real property devised to her for life with a remainder to designated persons, is a *quasi trustee* and occupies a fiduciary relation to the remaindermen, and in the exercise of that power, she owes to them the highest duty to act honestly and in good faith by selling the property to a *bona fide* purchaser for the best price offered. *Windscheffel v. Wright,* 187 Kan. 678, 360 P.2d 178 (1961). See also *In re Estate of Miller,* 225 Kan. 655, 594 P.2d 167 (1979). The officers and directors of a corporation occupy a strict fiduciary relationship with respect to both the corporation and its shareholders. *Newton v. Hornblower, Inc.,* 224 Kan. 506, 582

P.2d 1136 (1978); *Sampson v. Hunt,* 222 Kan. 268, 564 P.2d 489 (1977).

Several of our cases recognize that a fiduciary relationship may exist between members of the same family where land is deeded by one to the other and a confidence is in some way violated. *Staab v. Staab,* 160 Kan. 417, 163 P.2d 418 (1945); *Overstreet v. Beadles,* 151 Kan. 842, 101 P.2d 874 (1940); *Silvers v. Howard,* 106 Kan. 762, 190 Pac. 1 (1920). Fiduciary relationships may also arise from contractual relationships involving joint business enterprises, where one party has superior knowledge and the other party relies on him. *Wolf v. Brungardt,* 215 Kan. 272, 524 P.2d 726 (1974). In each of the cases cited above, there was a relationship of blood, business, friendship, or association in which the parties reposed special trust or confidence in each other and were in a position to have and exercise influence over each other and in which one party relied on the good faith of another to his or her detriment.

Where a fiduciary relationship exists, the law does not permit the fiduciary to make use of that relation to benefit his own personal interests at the expense of the other party. Stated in another way, a fiduciary is under a duty to refrain from situations wherein his own interests are brought into conflict with those of his trust, irrespective of good or bad faith on his part.

After considering the factual circumstances in this case as set forth in detail above, we have concluded that a fiduciary relation existed between VaRena Brown and the Foulks. There are several factors which together created in equity a fiduciary relationship in this case:

(1) A family relationship of mother, daughter, and son-in-law in which a special trust and confidence would be expected;

(2) A joint interest in a business enterprise created by contract; and

(3) A superior knowledge and control in one party and a reliance by the other party on his integrity.

The transfer of ownership and control of W.A. Brown Enterprises was carried out in accordance with a plan created by Bill Brown to achieve his twofold objective of passing after his death a successful business to his daughter and son-in-law, retaining, however, for his widow, VaRena, a comfortable income during her natural life. VaRena Brown had the right to trust and rely on Judith and Gene Foulks. If you cannot trust your daughter and

son-in-law, who can you trust? In accepting the ownership and management of Brown Enterprises, Gene Foulks had the duty to treat VaRena Brown fairly and to conduct the business in such a way wherein his own interests would not be brought into conflict with the interests of VaRena Brown.

VaRena Brown had to rely on the integrity of Gene Foulks in the management of the business. She had no knowledge of the operation of the business; the management of the business was in his hands. It is clear to us that the Foulks created Foulks Pipe, Inc., as a dummy corporation at least in part for the purpose of defeating VaRena Brown's right to her percentage of the gross sales of the business. The undisputed evidence shows that, although conducted in different states, the two businesses were essentially one business operating in two places. The general area of business operations was essentially the same. The assets and energies of each business were freely transferred back and forth without any attempt being made to compensate the other. We find that the manner in which Gene Foulks conducted the enterprises in Dodge City and Nebraska constituted a violation of the fiduciary relationship between him and VaRena Brown. In equity and good conscience, the two businesses must be treated as branches of a single business.

Having reached this conclusion, it follows that VaRena Brown is entitled to a complete accounting of the affairs of both businesses and to a percentage of the gross sales of both W.A. Brown Enterprises and Foulks Pipe, Inc., in accordance with the agreement of December 27, 1967. The district court erred in failing to find the existence of a fiduciary relation and a breach thereof and in deciding the case on the basis of a contract entered into at arms length between strangers.

In view of our disposition of the case on this basis, it is not necessary to consider separately the other issues by the parties on the appeal. We reverse the trial court and order that the case be remanded to the district court with directions to grant plaintiff an accounting of gross sales to all third parties either by W.A. Brown Enterprises or Foulks Pipe, Inc., and that on the completion of such accounting, the plaintiff be awarded a judgment against defendants for a percentage of the total gross sales of both enterprises based on their agreement of December 27, 1967.

On this appeal, plaintiff is seeking only a reversal of the

judgment of the trial court denying her a percentage of the gross sales of both W.A. Brown Enterprises and Foulks Pipe, Inc. No issue is raised on the appeal as to the plaintiff's right to royalty payments on the pipe perforated by the new machines on the premises of Foulks Pipe, Inc., in North Platte, Nebraska. That issue having not been raised on the appeal, we are not required to determine it and do not do so. In view of this court's holding, contrary to that of the district court, that the Kansas and Nebraska enterprises are a part of the same business entity, the district court on remand may reconsider the plaintiff's right to royalties on the Nebraska perforating machines. The judgment of the district court is reversed on the appeal and remanded with directions in accordance with the opinion.

In their cross-appeal, the defendants maintain that the December 1967, agreement was so indefinite and uncertain that it should now be declared void and the equities of the parties adjusted. We find this point to be without merit. The 1967 agreement was simple and easy to understand. The Foulks were to take over the business of W.A. Brown Enterprises and to pay to VaRena Brown a fixed sum of money, plus payment of a specific percentage of the gross sales of Brown Enterprises and its successors. The contract is for a definite period—the lifetime of VaRena Brown. We find that the agreement is definite, certain, and entitled to enforcement under the law. The judgment of the district court is affirmed as to the cross-appeal.