No. 36,795

MARY B. DINSMOOR, E. W. PATTON, and DOROTHY D. PATTON, *Appellants*, v. IRVING HILL, HORTENSE B. HILL, JUSTIN D. HILL, C. G. HESSE, THE LAWRENCE PAPER COMPANY, and JUSTIN D. BOWERSOCK, Trustee, *Appellees.*

(187 P. 2d 338)

· Opinion filed December 6, 1947.

*George K. Melvin, Raymond F. Rice,* both of Lawrence, and *A. B. Mitchell,* of Topeka, argued the cause, and were on the briefs for the appellants.

*C. C. Stewart,* of Lawrence, argued the cause, and *O. K. Petefish,* of Lawrence, was with him on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal by three plaintiffs from a judgment refusing to compel the defendants, Irving Hill and Justin D. Hill, to sell 306 shares of stock in The Lawrence Paper Company, originally owned by certain beneficiaries of the Mary G. Bowersock trust, to plaintiffs at $107.50 per share.

The relationship of the parties, the alleged history of events and the theory of plaintiffs' cause of action are succinctly stated in the petition and exhibits attached thereto. In order to obtain a complete understanding of the issues, numerous quoted portions of the petition and a statement, in substance, of other material portions thereof, together with the demurrers, rulings thereon, and answers, are appended to this opinion as a part thereof.

The action was tried by the court without the aid of a jury. The trial court made no formal findings of fact but expressed some views on the evidence which will be mentioned presently. The trial court indicated it entertained doubt concerning the correctness of its previous orders overruling the demurrers of defendants, Irving Hill and Justin D. Hill, to the petition and to the evidence of plaintiffs but rendered judgment in their favor upon a consideration of the evidence of all the parties.

From what is said at the conclusion of the pleadings and rulings, attached hereto, it is clear the only defendants involved on appeal are Irving Hill and Justin D. Hill, his son.

Plaintiffs appeal from the judgment and the order overruling their motion for a new trial.

Appellees question appellants' right to be heard on their first specification of error. The contention is that since the specification of error merely states the court erred in the judgment rendered without specifying any particular error it is insufficient, citing *Hamilton v. Binger*, 162 Kan. 415, 176 P. 2d 553, and cases referred to therein. Appellants have requested leave to amplify that specification of error. The precise points of the specification as amplified were presented by appellants in their original brief. Appellees were fully apprised of such contentions and were in nowise misled as is clearly indicated by their answer brief. The contentions made here by appellants were the issues presented in the trial court as disclosed by appellants' abstract. Under these circumstances the request to amplify the first specification of error is granted.

The fundamental theory of plaintiffs' cause of action, as clearly disclosed by their petition, is that Irving Hill and Paul A. Dinsmoor, two sons-in-law of Mary G. Bowersock, now deceased, while those men were managing The Lawrence Paper Company, had a verbal understanding and agreement that stock in that company should be owned forever in equal shares by the Irving Hill and Paul A. Dinsmoor families and that Irving Hill, after Paul A. Dinsmoor's death in 1940, violated the agreement in his fiduciary capacity as one of two remaining trustees of the Mary G. Bowersock trust created in 1923, in his fiduciary capacity as administrator of the Paul A. Dinsmoor estate, as president of the paper company, as president of The Lawrence National Bank and as the general confidential adviser of plaintiffs in their business and financial affairs. The gist of the alleged breach of such duties was that he conspired with his son, Jus-

tin D. Hill, to purchase 612 shares of stock from certain beneficiaries of the Mary G. Bowersock trust, thereby disrupting the equality of stock ownership by the two mentioned families.

While, as stated, the trial court did not make formal findings of fact it concluded the issues generally in favor of defendants and refused to grant the relief sought. The Mary G. Bowersock trust will be referred to hereafter as the trust and The Lawrence Paper Company will be referred to as the paper company. The post-trial comments of the court indicated quite clearly the impressions the evidence had made on its mind and its summary of the evidence, in effect, constituted findings of fact. (*Rasmussen v. Rasmussen*, 148 Kan. 649, 657, 84 P. 2d 919.) The court, in substance, found that by reason of the close friendship and business relations which had at all times existed between Paul A. Dinsmoor and Irving A. Hill, stock in the paper company was held in equal amounts by their families during the life of Paul A. Dinsmoor. There was, however, evidence which indicated the brothers and sisters and other relatives of the plaintiff, Mary B. Dinsmoor, did not regard the arrangement which had existed between Irving Hill and Paul A. Dinsmoor during their joint lifetime as continuing after the death of the latter. This last evidence and some other facts supporting the judgment of the court will be referred to presently. The court also indicated doubt concerning the validity of the alleged agreement of equal stock ownership by all future generations of the two families, if such an agreement had been made. The trial court further indicated that, under all the evidence, it did not believe Irving Hill was the confidential adviser generally for the plaintiff, Mary B. Dinsmoor, widow of Paul A. Dinsmoor, in her various business and financial affairs, at least not after July 24, 1940. It also concluded the 612 shares of stock were purchased from certain beneficiaries of the trust by Justin D. Hill, and not by his father, Irving Hill.

A general verdict resolves all issues of fact in favor of the prevailing party or parties. If supported by evidence the verdict must stand. (*Fisher v. Central Surety & Ins. Corp.*, 149 Kan. 38, 86 P. 2d 583.) That is, of course, likewise true of a general judgment in the absence of specific findings of fact which are contrary to such judgment. Here there were no specific findings of fact against defendants and the post-trial comments of the trial court, in effect findings of fact on the issues, were in their favor.

It should be stated, however, the mere fact Irving Hill was found

not to occupy a general fiduciary capacity towards the plaintiff, Mary B. Dinsmoor, would not relieve him from the duties resulting from the fiduciary relation he occupied towards her as a trustee of the trust under which she was a beneficiary. In such capacity a trustee is held in equity and good conscience to the exercise of good faith which requires him to act with due regard to the interests of the beneficiaries. (*Frazier v. Jeakins,* 64 Kan. 615, 68 Pac. 24; *Niblack v. Knox,* 101 Kan. 440, 167 Pac. 741; *Judy & Gilbert v. Railway Co.,* 111 Kan. 46, 205 Pac. 1116; *Lindholm v. Nelson,* 125 Kan. 223, 264 Pac. 50; *Alumbaugh v. Hedges,* 125 Kan. 449, 265 Pac. 50; *Miller v. Henderson,* 140 Kan. 46, 33 P. 2d 1098; *Flitch v. Boyle,* 147 Kan. 600, 78 P. 2d 9; *Staab v. Staab,* 160 Kan. 417, 163 P. 2d 418; *Meinhard v. Salmon,* 249 N. Y. 458, 164 N. E. 545, 62 A. L. R. 1; *Tucker v. Brown,* 20 Wn. 2d 740, 150 P. 2d 604; *Trice v. Comstock,* 121 Fed. 620; *In re Mountain States Power Co.,* 118 F. 2d 405; *Wooten v. Wooten,* 151 F. 2d 147; *Wooten v. Wooten,* 159 F. 2d 567; 3 Bogert on Trusts and Trustees, §§ 485, 492, 543.) Upon these authorities appellants rely.

We are fully aware of the salutary principles enunciated in our own decisions and do not intend to retract therefrom. It may be doubted that the decisions in other jurisdictions hold a trustee to a higher standard of fiduciary duty than do our own. We are not unmindful of the fact that equity is not bound by technicalities but can usually find a way to afford redress for the wrongful acts of one clothed with fiduciary power. On the other hand, every alleged grievance is not a wrong. Every case must rest on its own bottom.

Appellants ask us to conclude a trust arose in their favor which compels the transfer to them of one-half of the shares of stock in the paper company purchased by Justin D. Hill from certain beneficiaries of the trust. They contend such a trust arose by implication and operation of law. The contract alleged by appellants is the foundation of their right to recover. (*Woltz v. First Trust Co.,* 135 Kan. 253, 259, 9 P. 2d 665; *Staab v. Staab,* 160 Kan. 417, 421, 163 P. 2d 418.)

The first difficulty confronting appellants in this case is the establishment of the alleged agreement: If the agreement did not exist it obviously could not be violated by Irving Hill in any trust capacity. If it did not exist we need not discuss the question of its validity had it been established.

There are various facts and circumstances which militate strongly

against plaintiffs' contention there was an agreement that stock in the paper company should be forever equally divided between the remaining members of the two families. The most important member of the Dinsmoor family, insofar as the operation and management of the paper company is concerned, is gone. The harmonious thinking and coöperative action between Paul A. Dinsmoor and Irving Hill are no longer factors in the management and operation of the paper company. Paul A. Dinsmoor's fidelity, ability and spirit can no longer be relied upon by Irving Hill to the benefit of that company. Is the Dinsmoor family, with Paul A. Dinsmoor removed therefrom, the family that was contemplated by the alleged agreement of equality of stock ownership? The trial court apparently did not think so.

Did the brothers, sisters and other relatives of the plaintiff, Mary B. Dinsmoor, who were also beneficiaries of the trust, recognize the alleged oral agreement as continuing after the death of Paul A. Dinsmoor in 1940? Did Justin D. Bowersock, attorney for the paper company, a brother of the plaintiff, Mary B. Dinsmoor, a beneficiary of the trust and one of its surviving trustees, recognize the alleged agreement as a continuing one? Should these parties have recognized the alleged oral agreement in view of the terms and provisions of the trust?

The trust created by Mary G. Bowersock for her six children as beneficiaries consisted of substantial property, both real and personal, in addition to the 900 shares of stock in the paper company, 612 shares of which are here involved. Mary G. Bowersock nominated as trustees of that trust her own son, Justin D. Bowersock, and her sons-in-law, Irving Hill, who had married her daughter, the defendant Hortense B. Hill, and Paul A. Dinsmoor, who had married her daughter, the plaintiff, Mary B. Dinsmoor. Paul A. Dinsmoor died in 1940 leaving the other two surviving trustees to administer the trust.

In the deed of trust the settlor directed the trustees to "transfer, convey and set over *absolutely, to my said children, their heirs and assigns* . . . all of the trust estate." (Our emphasis.) Here there clearly was no qualification or limitation of any beneficiary's right to sell or assign the stock he had received to any person whomsoever. The trustees had no choice in the matter. They were directed to transfer the stock to the beneficiaries *absolutely.* The beneficiaries were the six children, their heirs *and assigns.* The

trustees were, therefore, duty bound to transfer the stock to-whom-ever any of the named beneficiaries might sell or assign it. (See provisions of exhibit "A" in paragraph 6 of petition.)

Furthermore, on September 3, 1942, all the beneficiaries, the six children of the settlor, entered into a written agreement personally, or by their duly constituted representatives, to distribute the shares of stock "as directed by said deed" of 1923. Each beneficiary acknowledged receipt of the shares of stock as expressly set forth in the agreement of distribution. (See provisions of exhibit "C" in paragraph 10 of petition.) Here then is the agreement of the beneficiaries themselves, including the plaintiff, Mary B. Dinsmoor, to distribute this stock absolutely to the beneficiaries, their heirs *and assigns*.

The defendant, Justin D. Bowersock, one of the remaining trustees, was a beneficiary of that trust to the extent of 234 shares of stock. As stated, he is a brother of the plaintiff, Mary B. Dinsmoor, and an uncle of the plaintiff, Dorothy D. Patton. He sold his stock to Justin D. Hill. Jean Bowersock Blackwelder, a sister of the plaintiff, Mary B. Dinsmoor, sold her 144 shares to Justin Hill. Margery B. Dalton, a deceased sister of the plaintiff, Mary B. Dinsmoor, left surviving a husband, William B. Dalton, and four children. The latter had reached their majority and through The Lawrence National Bank, which had been their guardian and trustee, sold their seventy-two shares of stock to Justin Hill as shown by their own written agreements. Their father, William B. Dalton, sold his seventy-two shares to the same purchaser. Fred Bowersock, the other brother of the plaintiff, Mary B. Dinsmoor, had died. He had created a trust estate for his widow, Fanny Bowersock, and Justin D. Bowersock and Irving Hill were its trustees. They sold her ninety shares of stock to the same purchaser. Thus, in keeping with the rights acquired by the trust deed of the settlor and the rights fixed by the agreement of distribution made by the beneficiaries in conformity with the deed of trust, the above mentioned beneficiaries exercised their absolute right to sell the stock in question to whom they pleased.

Neither of the plaintiffs, E. W. Patton, nor Dorothy D. Patton, his wife, were beneficiaries of the trust. They are simply endeavoring to enforce the alleged agreement as a daughter and son-in-law of the plaintiff, Mary B. Dinsmoor.

Let -us reverse the situation and suppose these various beneficiaries of the trust had sold, bequeathed or given their stock to the plaintiff, Mary B. Dinsmoor. Under the facts of this case could Justin D. Hill, a son of Irving Hill, compel Mary B. Dinsmoor to convey one-half of the stock to him under the facts in this case? Could heirs of Justin D. Hill and their heirs, if any, compel succeeding generations of the Dinsmoor family to keep the stock equally divided among the remaining members of these two families? We think the evidence in this case did not compel the court to conclude such an agreement existed. Whether a contrary conclusion, if reached, could have been upheld under the evidence need not be determined. Neither need we determine whether the trial court would have been compelled to find Irving Hill breached any existing fiduciary relation toward plaintiffs, if the alleged oral contract had been established.

Appellants complain the stock was not immediately distributed after the agreement of distribution in September, 1942, and was not sold to Justin D. Hill until May, 1944. We fail to find that the plaintiff, Mary B. Dinsmoor, a beneficiary, made any complaint concerning the delay in distribution.

Appellants also contend they had no knowledge of the sale prior to its consummation. This contention also involves their alleged right to purchase one-half of the stock. We may, however, say there was evidence the plaintiff, E. W. Patton, had learned in 1940 or 1941 from Justin Bowersock that the latter was conferring with Justin D. Hill concerning the sale of his 234 shares. That was before the agreement of distribution. E. W. Patton was secretary and treasurer of the paper company, the husband of plaintiff, Dorothy D. Patton, and the son-in-law of the plaintiff, Mary B. Dinsmoor. There was testimony the latter may have been in the conference between E. W. Patton and Justin Bowersock. Concerning her presence Bowersock, however, frankly stated he was not certain. In any event the trial court may have believed it was reasonable to assume Patton had probably conferred with his wife and mother-in-law concerning the contemplated sale of stock by Bowersock to Justin Hill. There was testimony E. W. Patton advised his wife and mother-in-law about their business and financial affairs after July 24, 1940. Irrespective of that fact, however, we find no evidence or claim by appellants that they signified any desire to buy one-half of the stock prior to the filing of this action on July 12,

1945. The action was filed more than a year after the sale of the stock to Justin Hill in 1944.

Appellants urge a new trial should have been granted in order that they might introduce newly discovered evidence. There is some ground for appellees' contention that due diligence before the trial would have resulted in the discovery of that evidence. At any rate this action was not tried by a jury but by the court and if in its opinion the newly discovered evidence would not result in a changed judgment, the court did not abuse its discretion in denying the motion for a new trial. (*King v. Consolidated Products Co.*, 159 Kan. 608, 157 P. 2d 541, and cases therein cited.) Here again this evidence, as well as various other facts not related herein, might be quite material if the alleged oral agreement had been established and its validity sustained.

A studious examination of the entire record leads us to conclude the evidence in this case will not permit a reversal of the judgment.

The judgment is affirmed.

THIELE, J., not participating.

---

The petition alleged:

"FIRST. That the plaintiffs, Mary B. Dinsmoor, E. W. Patton, and Dorothy D. Patton, each, and the defendants, Irving Hill, Hortense B. Hill, J. D. Hill and C. G. Hesse are residents of Douglas County, Kansas, and that the defendant, Justin D. Bowersock, is a resident of Missouri.

"SECOND. That the plaintiffs, E. W. Patton and Dorothy D. Patton, and the defendants, Irving Hill, Hortense B. Hill, J. D. Hill, Justin D. Bowersock, and C. G. Hesse, are directors of the Lawrence Paper Company, and the officers of said Lawrence Paper Company are Irving Hill, President; C. G. Hesse, Vice-President, in charge of sales; J. D. Hill, Vice-President, in charge of production; E. W. Patton, Secretary and Treasurer, as will hereinafter appear.

"THIRD. That the Lawrence Paper Manufacturing Company which later became the Lawrence Paper Company, a corporation, was developed and owned prior to the year 1910 by J. D. Bowersock, now deceased. In the year 1910, said Lawrence Paper Manufacturing Company was owned in its entirety by Mrs. M. G. Bowersock, a widow of the said J. D. Bowersock, deceased, and was unincorporated.

"Six children were born to the said union of J. D. Bowersock and his wife, to-wit: Hortense Bowersock, Mary Bowersock, Jean Bowersock, Margery Bowersock, Fred Bowersock, and Justin D. Bowersock.

"Hortense Bowersock, one of the defendants herein, married Irving Hill, a defendant in this action; Mary Bowersock, a plaintiff herein, who is now Mary B. Dinsmoor, married Paul A. Dinsmoor, now deceased; Jean Bowersock,

married Eliot Blackwelder, and Margery Bowersock married William Dalton, and is now deceased.

"FOURTH. In the year 1910, Paul A. Dinsmoor and Irving Hill, sons-in-law of Mrs. M. G. Bowersock, were in the active management of said Lawrence Paper Manufacturing Company with equal authority in its management, and at equal salary. During said year of 1910, Mrs. M. G. Bowersock agreed with Paul A. Dinsmoor and Irving Hill that she would give to each of them a one-fifth interest in said Lawrence Paper Manufacturing Company upon the condition that the business and sales of the company should be increased by them; and thereafter, in accordance with her agreement with them, did on January 1st, 1914, give to said Paul A. Dinsmoor and Irving Hill, each, a one-fifth interest in all the property and business pertaining to the Lawrence Paper Manufacturing Company, and thereafter on the first day of January, 1917, gave to each of her daughters, Mary B. Dinsmoor, Hortense B. Hill, Jean B. Blackwelder, and Margery B. Dalton, each, a one-tenth interest in said property and business, retaining for herself the remaining one-fifth interest in said property and business.

"That from the 1st day of January, 1917, until December 31, 1923, said Lawrence Paper Manufacturing Company was a partnership composed of the persons named in this paragraph, owning the interests as herein set out, with said business operating under the management of Paul A. Dinsmoor and Irving Hill.

"FIFTH. That on, or about, the 31st day of December, 1923, the partners, other than Jean B. Blackwelder and Margery B. Dalton, purchased the interests of the said Jean B. Blackwelder and Margery B. Dalton, creating a new partnership in and of the business in the following interest to-wit: Mrs. M. G. Bowersock, a one-fourth interest; Paul A. Dinsmoor, a one-fourth interest; Irving Hill, a one-fourth interest; Mary B. Dinsmoor, a one-eighth interest, and Hortense B. Hill, a one-eighth interest; and the business continued to be controlled and operated through the joint and equal management of the defendant, Irving Hill, and the said Paul A. Dinsmoor.

"SIXTH. That on the 1st day of January, 1923, the said Mrs. M. G. Bowersock executed a deed in trust which conveyed her interest in the Lawrence Paper Manufacturing Company (along with other property) to Justin D. Bowersock, her son of Kansas City, Missouri, Irving Hill and Paul A. Dinsmoor of Lawrence, Kansas, as trustees for the benefit of persons named therein as beneficiaries. A copy of said deed is hereto attached, marked 'Exhibit A' and made a part hereof.

"Said trustees therein named did thereafter qualify and act as such trustees upon the properties described in the said deed until the death of Paul A. Dinsmoor on April 17, 1940, after which and including the present time, the said Justin D. Bowersock and Irving Hill continued as the two remaining trustees of said trust."

(Pertinent portions of exhibit "A" are:

"2. During my lifetime and for a period of five years from and after my death, said trustees shall invest and reinvest the trust estate and pay over the income, after deducting expenses, semi-annually, twenty-six per cent to my son, Justin D. Bowersock, sixteen per cent each to my daughters Hor-

tense B. Hill, Mary B. Dinsmoor, Jean B. Blackwelder and Margery B. Dalton, and ten percent to my son, Fred H. Bowersock, subject to the provisions of Paragraph 4 hereof.

"3. Upon the expiration of five years from and after my death and subject to the conditions set out in Paragraph 8 hereof, said trustees shall transfer, convey and set·over absolutely, to my said children, their heirs and assigns, except· my son, Fred H., as hereinafter provided, all of the trust estate, principal and accumulated income, in the proportions designated in Paragraph 2 hereof and said trustees shall thereupon be discharged of further duties or obligations hereunder, except as to the interest of my said son, Fred H.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"5. I desire said trustees to have and I hereby vest in them the full management and control of all of my said estate and property hereby transferred to them . . . with power to sell or lease, at such times and prices and on such terms as they may think proper, any property at any time a part of the trust estate; with power to execute contracts of sale and other contracts, deeds, leases and other instruments; with power to vote any shares of stock that may at any time be a part of the trust estate.")

"SEVENTH. On the 21st day of July, 1931, the Lawrence Paper Company was incorporated under the laws of the State of Kansas with capital stock consisting of 4000 shares owned as follows:

"Irving Hill, Lawrence, Kansas, 1000 shares; Paul A. Dinsmoor, Lawrence, Kansas, 1000 shares; Hortense B. Hill, Lawrence, Kansas, 500 shares; Mary B. Dinsmoor, Lawrence, Kansas, 500 shares; Charles G. Hesse, Lawrence, Kansas, 1 share; Arthur S. Peck, Lawrence, Kansas, 1 share; and the M. G. Bowersock Trust, 998 shares; which interest in stock ownership in said company represented the proportionate partnership interest in said property and business immediately preceding its incorporation except as to the two shares of stock owned by Charles G. Hesse and Arthur S. Peck, said two shares of stock being taken from the M. G. Bowersock Trust interest.

"EIGHTH. That on the 1st day of January, 1934, an agreement was made between Irving Hill, Paul A. Dinsmoor, Hortense B. Hill, Mary B. Dinsmoor, Justin D. Bowersock, and Irving Hill and Paul A. Dinsmoor, trustees under the deed of Mary G. Bowersock, dated January 1st, 1923, as parties of the first part, and Charles G. Hesse, party of the second part, under and by virtue of which the first parties delivered to the Lawrence National Bank of Lawrence, Kansas, as trustee, a certificate, or certificates, for 399 shares of the capital stock of the Lawrence Paper Company to be held by said trustee for the purposes of said agreement, that said 399 shares of stock were contributed from the interest of each party concerned in the proportionate amount of 10% of the stockholding of each party, so that the ratio of the interests held by first parties to said agreement, remained the same as to each other. The purposes of said agreement were that said shares of stock were to be transferred to said second party at a stipulated rate upon the performance of certain conditions with provision for the return of said stock to said first parties from whom it was obtained if said second party should sever his connection with said company. A copy of said agreement is hereto attached, marked 'Exhibit B' and made a part hereof.

"Ninth. After the death of Paul A. Dinsmoor on April 17, 1940, Mary B. Dinsmoor and her daughter, Dorothy D. Patton, plaintiffs herein, filed their petition in the Probate Court of Douglas County, Kansas, asking for the appointment of Irving Hill as Administrator of the Estate of the said Paul A. Dinsmoor and on April 25, 1940, the said Irving Hill qualified and filed his bond in the amount of $300,000.00 with the American Bonding Company of Baltimore as surety for $50,000.00; and the said Mary B. Dinsmoor and Dorothy D. Patton as surety for $250,000.00.

"On November 2nd, 1940, the said Irving Hill as Administrator filed his petition with said Probate Court for the sale of stock belonging to said Estate including 850 shares of the Lawrence Paper Company, to be sold at private sale with an appraisal upon said stock at $63.68 per share, and a waiver upon said matter was duly signed by the said Mary B. Dinsmoor and Dorothy D. Patton, they not knowing that Irving Hill contemplated the sale of the Lawrence Paper Company stock, or that it was included in said petition.

"An order of said court granting the petition was made on November 2, 1940, but said 850 shares of Lawrence Paper Company stock were not sold under said Order because these plaintiffs later discovered that said Lawrence Paper Company stock was included in said Order and requested and required its deletion from said order.

"That said stock was upon October 23, 1941, ordered distributed equally to Mary B. Dinsmoor and Dorothy D. Patton. In said Order of the Probate Court of October 23, 1941, was included an order to pay the attorney for said Irving Hill, administrator, the sum of $2,000.00 and to pay the said Irving Hill, as administrator, the sum of $4,500.00; and later an Order of January 8, 1943, ordered the payment of an additional sum of $1,500.00 to the attorney for said administrator and the additional sum of $4,000.00 to Irving Hill, administrator. The said Irving Hill continued as administrator of the estate of Paul A. Dinsmoor from his qualification on April 25, 1940, until said estate was settled and the administrator discharged on June 3, 1943.

"That prior to the death of Paul A. Dinsmoor, he assigned and set over to E. W. Patton, a plaintiff herein, 50 shares of said Lawrence Paper Company stock, and since October 23, 1941, Mary B. Dinsmoor has transferred and assigned to Dorothy D. Patton and E. W. Patton, all of the stock of the Lawrence Paper Company held by her as of the date of October 23, 1941. That Mary B. Dinsmoor, Dorothy D. Patton, and E. W. Patton now constitute the Dinsmoor family, and now hold the Dinsmoor interests in said Lawrence Paper Company, except as hereinafter set out.

"Tenth. That on the 3rd day of September, 1942, the heirs of Mrs. M. G. Bowersock, deceased, and beneficiaries under the Deed in Trust which is 'Exhibit A' attached hereto, entered into an agreement, which is attached hereto and marked 'Exhibit C,' and made a part hereof. That under the terms of said agreement, a portion of the assets of said trust were to be distributed and in the amounts set out in Schedule A thereof. Included in said Schedule A is the stock in the Lawrence Paper Company which formed a part of the M. G. Bowersock Trust."

(The pertinent part of exhibit "C" reads:

"The trust established by the deed of Mary G. Bowersock, dated January

1, 1923, having terminated, according to its terms, on April 20, 1942, and it being the duty of the Trustees named in said deed thereupon to render an account of the trusteeship, and to distribute the assets in said trust as directed by said deed, the undersigned: Justin D. Bowersock; Hortense B. Hill; Jean B. Blackwelder; Justin D. Bowersock and Irving Hill, Trustees for Fanny P. Bowersock, widow of Fred H. Bowersock, et al; Mary B. Dinsmoor; William B. Dalton; Lawrence National Bank, Testamentary Guardian and Trustee for Margery Dalton Hurst, Loring Dalton, Curtis Dalton and Mary Dalton Murphy, who constitute all the beneficiaries entitled to share in said trust estate, do now, each for himself or herself, in consideration of the agreements of the others, enter into the following agreement:

"1. The undersigned hereby individually and separately, acknowledge receipt of the assets and cash set forth under their respective names upon the attached Schedule A in partial distribution of said estate. Said amounts are accepted in full satisfaction of all obligations of said Trustees and of the estate of Paul A. Dinsmoor, deceased, as to all assets and dealings of said Trustees, except as hereinafter provided.")

(Schedule "A" of exhibit "C" listed the number of shares of stock to which each beneficiary of the trust was entitled.)

TENTH Con't:

"That no distribution of the shares of stock in the Lawrence Paper Company owned and held by the M. G. Bowersock Trust has been made, nor was any attempt to distribute said shares made until the Secretary of the Lawrence Paper Company, E. W. Patton, received on or about June 8, 1944, a letter from the Trust Officer of the Lawrence National Bank, a copy of which is hereto attached, marked 'Exhibit D,' and made a part hereof. And that thereafter on January 4, 1945, E. W. Patton received a receipt for signature of the Lawrence Paper Company which is hereto attached, marked 'Exhibit E,' and made a part hereof.

"That the said letter and receipt marked 'Exhibit D and E,' respectively, requested a receipt for the 900 shares owned by the M. G. Bowersock Trust, and a transfer of such shares to the following persons in the proportions shown to-wit:

"Mary B. Dinsmoor, 144 shares; Hortense B. Hill, 144 shares; and Justin D. Hill, 612 shares."

(The 612 shares in The Lawrence Paper Company directed by the trustees to be issued to Justin D. Hill comprised all shares of all stockholders in the M. G. Bowersock trust, except the shares of Mary B. Dinsmoor and Hortense B. Hill, which such other stockholders had directed the trustees to sell to Justin D. Hill at $107.50 per share.)

The petition, in substance, further alleged: From the time Irving Hill and Paul A. Dinsmoor undertook the management of the Lawrence Paper Manufacturing Company and at all times through its history until the matters herein complained of arose it was the verbal understanding and agreement and consisted of words and action

of said Hill and Dinsmoor that their family interests should be maintained on an equal basis and that subject to the agreement for the sale of stock to C. G. Hesse, the stock of the paper company in the M. G. Bowersock trust should be so considered and treated; during the life of Paul A. Dinsmoor the understanding was carried out; it was also understood and agreed the two families should be allowed to acquire an equal amount of The Lawrence Paper Company stock which might become available for purchase from interests other than those of the two families; Mary B. Dinsmoor and her daughter, Dorothy D. Patton, were and are without business experience or knowledge of their own business affairs; from the date of Paul A. Dinsmoor's death on April 17, 1940, they both looked upon Irving Hill as their financial and business adviser and placed those affairs in his hands; E. W. Patton also was uninformed concerning the business affairs of Mary B. Dinsmoor and his wife, Dorothy D. Patton; he also considered Irving Hill as the business and financial adviser of himself, his wife, Dorothy D. Patton, and his mother-in-law, Mary B. Dinsmoor; his wife and mother-in-law petitioned for the appointment of Irving Hill as administrator of the estate of Paul A. Dinsmoor; they signed all papers connected with the estate at his direction without knowing the contents or import thereof; they gave him voting proxies upon all matters in which they were interested; Irving Hill accepted the position of such adviser to Mary B. Dinsmoor, Dorothy D. Patton and E. W. Patton and they relied upon him as their personal adviser; Irving Hill did not indicate to any of the plaintiffs his intention to prevent plantiffs from retaining an equal interest in The Lawrence Paper Company; he had created the belief the interests of the families should remain equal (incidents alleged to create such belief were pleaded); relying upon Irving Hill's advice Mary B. Dinsmoor signed the waiver for sale of stock at private sale in the administration of the Paul A. Dinsmoor estate and in like manner signed the agreement of September 3, 1942, marked exhibit "C"; she did not know the nature or contents of any such papers.

It was further, in substance, alleged: Irving Hill as trustee of the M. G. Bowersock trust, as administrator and as confidential adviser of Mary B. Dinsmoor and the other plaintiffs, conspired and agreed with his son, Justin D. Hill, to purchase in the name of the latter all interests in The Lawrence Paper Company held by the M. G. Bow-

ersock trust other than the interests of Mary B. Dinsmoor and Hortense B. Hill; such interests were purchased on the basis of $107.50 per share; the purchases were made without the knowledge or consent of the plaintiffs and in violation of the previously stated agreement and understanding; no opportunity was afforded plaintiffs to participate in the purchase of those interests; shortly after June 8, 1944, when E. W. Patton, secretary and treasurer of the Lawrence Paper Company, received the request from The Lawrence National Bank to transfer the stock of the M. G. Bowersock trust, Irving Hill informed E. W. Patton he could see no further reason for E. W. Patton and himself to be on an equal basis in the company; Irving Hill and Justin D. Hill intended by their scheme to take over full control of the paper company and to dismiss E. W. Patton therefrom or to reduce his salary and to control the company affairs to the prejudice of the minority stockholders in violation of the former agreement; the scheme was to defraud the plaintiffs and was deliberate, having originated in the mind of Irving Hill soon after the death of Paul A. Dinsmoor and prior to obtaining the order of the probate court to sell the stock of Paul A. Dinsmoor in the paper company at private sale; Irving Hill was at all times material to this action the president of The Lawrence National Bank, voted ninety-one shares of stock owned by Mary B. Dinsmoor therein and the details concerning the scheme to purchase the stock involved were carried out through said bank entirely unknown to plaintiffs; no legal distribution of the stock in the M. G. Bowersock trust has been made to its beneficiaries; so far as known to plaintiffs the 900 shares of stock have at all times been classified as belonging to the trust; by reason of the foregoing facts a trust arises in favor of the plaintiffs by implication and operation of law; plaintiffs are entitled to purchase one-half of the 612 shares of the paper company stock sold by the distributees of the M. G. Bowersock trust to Irving Hill and Justin D. Hill in the name of Justin D. Hill at the price paid therefor, to wit: $107.50; plaintiffs tender into court the sum of $38,895 in payment thereof; plaintiffs should also be adjudged to have the right to purchase one-half of the 399 shares of stock in the paper company purchased by C. G. Hesse in 1934 in the event it should be at any time surrendered by C. G. Hesse.

Separate demurrers were filed by the defendants, The Lawrence Paper Company, Hortense B. Hill, Irving Hill and Justin D. Hill on

the ground the petition failed to state a cause of action. They were sustained as to the first two parties above named and overruled as to the last two parties, who then filed separate answers and alleged:

". . . if there ever had existed any verbal understanding and agreement, as alleged in Paragraph *Eleventh* of plaintiffs' petition, the same was void and is unenforceable under the Statute of Frauds of the State of Kansas by reason of the fact that such agreement was not to be performed within a period of one year from the date of the making thereof, and

"*For further answer,* this defendant admits the allegations contained in Paragraph *First* of plaintiffs' petition, and denies each and every other material allegation contained therein."

The defendant C. G. Hesse, who was not related to the Hills or Dinsmoors but who was acquiring 399 shares of stock in The Lawrence Paper Company under an agreement executed in 1934 between himself and Irving Hill, Paul A. Dinsmoor, Hortense B. Hill, Mary B. Dinsmoor and Justin D. Bowersock, Irving Hill and Paul A. Dinsmoor, trustees under deed of Mary G. Bowersock, dated January 1, 1923, admitted his 1934 contract, that he was an employee of The Lawrence Paper Company and that the stock he purchased had been and was being delivered to him pursuant to such contract. He neither admitted nor denied other allegations of the petition. No judgment was rendered disturbing his rights in and to such stock. The defendant, Justin D. Bowersock, was not served with summons and did not enter his appearance as a party. The separate general demurrers of Irving and Justin D. Hill to plaintiffs' evidence were overruled.