No. 37,314

HATCHER E. SCOTT, *Appellee,* v. THE SOUTHWEST GREASE AND OIL
COMPANY, *Appellant.*

(205 P. 2d 914)

Opinion filed May 7, 1949.

*Claude I. Depew,* of Wichita, argued the cause, and *W. E. Stanley, Lawrence Weigand, William C. Hook, Lawrence E. Curfman, Byron Brainerd,* and *William C. Kandt,* all of Wichita, were with him on the briefs for the appellant.

*John F. Eberhardt,* of Wichita, argued the cause, and *George Siefkin, George B. Powers, Samuel E. Bartlett, Andrew F. Schoeppel, Carl T. Smith, Stuart*

172

R. Carter, Thomas E. Woods, and Robert C. Foulston, Jr., all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for the specific performance of an oral contract. Plaintiff prevailed and defendant, The Southwest Grease and Oil Company, a corporation, appeals. The general nature of the transaction and plaintiff's theory of his action may be briefly stated as follows:

The defendant corporation is located in Wichita and is engaged in the sale of oil and greases; it desired to manufacture and sell an hydraulic lubricant to Ford dealers; it discovered a man by the name of Jack Reed had a special lubricant of a particular character which was in great demand and that Reed was doing an extensive business in that field; defendant was unable to make sales to numerous prospective customers for the reason they insisted upon using only the lubricant sold by Reed; plaintiff, Hatcher E. Scott, was an intimate personal friend of Reed; defendant through its president, Harold A. Mayor, consulted the plaintiff late in 1939, or the early part of 1940, and expressed to plaintiff the desire to have Reed brought into defendant's business; the defendant through its president, contracted orally to compensate plaintiff in the form of a specified commission for every gallon of the lubricant defendant sold if he, plaintiff, succeeded in persuading Reed to quit his own business and to come into defendant's employment; the commission was to commence whenever Reed accepted such employment; plaintiff performed his part of the agreement; Reed entered defendant's employment in the year 1940; Reed's formula for the lubricant was adopted by defendant and the lubricant was sold in extensive quantities and with substantial profits; Mayor insisted the commission agreed upon to be paid to plaintiff was not to be made known to Reed; plaintiff was paid the agreed compensation regularly on a quarterly basis in March, June, September and December of each year until and including the month of March, 1945; in 1945 defendant breached the contract and informed plaintiff his commission would be discontinued.

Other details are covered by the findings made by the trial court which tried the action without a jury.

It was defendant's principal contention the contract relied upon by plaintiff was not made but that plaintiff was employed only as a

correspondent and advertising manager for defendant without any stated duration.

There was sharp conflict in much of the testimony. The trial court resolved all issues of fact in favor of the plaintiff. It made findings of fact and conclusions of law which are appended to this opinion and made a part hereof. There is ample evidence in the record to support the findings of fact and they can, therefore, not be disturbed.

The findings of fact and conclusions of law were incorporated into and made a part of the journal entry of judgment. The findings of fact and conclusions of law were made on February 1, 1948. A money judgment was rendered against the defendant corporation for amounts found due at installment payment periods except as to one period for which the accounting was not complete. The court retained jurisdiction for the purpose of determining any question of accounting that might arise subsequent to the judgment.

A general demurrer of the individual defendant, Harold A. Mayor, to plaintiff's evidence was sustained and the general demurrer of the defendant corporation was overruled. The latter defendant alone appeals. We shall continue to refer to the parties on appeal as plaintiff and defendant.

We shall not burden the opinion with a narrative of the conflicting testimony. On demurrer we are, of course, concerned only with plaintiff's evidence which is favorable to him.

Applying this rule a review of the testimony offered on behalf of plaintiff compels us to conclude: Defendant was exceedingly anxious to obtain the services of Reed and to benefit by his extensive connections, reputation and good will in the lubrication trade; its president saw fit to contact the plaintiff, an intimate friend of Reed, and to obtain plaintiff's services for the purpose of inducing Reed to leave his own business and to join the defendant company; an oral contract was entered into by and between plaintiff and the defendant through its president, Mayor, whereby defendant agreed to compensate plaintiff for his services in accordance with the findings of the trial court; plaintiff was paid by defendant in accordance with the agreement beginning in 1940 and ending in 1945 when defendant breached the contract; the quarterly payments to plaintiff by the defendant in accordance with the commission agreed upon confirmed the contract made by its president if the contract was not previously valid and binding on the defendant; the contract benefited the de-

fendant; the contract required defendant to pay the commission to plaintiff so long as the product was sold by defendant; defendant had benefited substantially by increased trade and profits due to plaintiff's performance of his agreement to persuade Reed to join defendant's business; defendant would continue to profit as a result of plaintiff's performance; it was not inequitable to require defendant to compensate plaintiff in accordance with its agreement so long as it sold the product.

The record in this case discloses not only that Mayor was president of the defendant corporation but that he was in fact and in reality its active business manager. In the absence of any showing of lack of authority it cannot be said that Mayor was not acting within the apparent scope of his authority. (*Petroleum Co. v. Gas & Fuel Co.*, 112 Kan. 73, 76, 209 Pac. 826.) The payment to plaintiff of the commissions for a period of years by the corporation constituted ratification of the contract. Furthermore, having accepted the benefits of plaintiff's performance of the contract the defendant cannot repudiate its obligations thereunder. (*El Dorado Nat'l Bank v. Coca-Cola Bottling Co.*, 129 Kan. 272, 282 Pac. 579.)

With respect to the equities of the transaction it also should be observed defendant makes no contention plaintiff was guilty of any fraud or overreaching. It constitutes no defense to specific performance that plaintiff will reap a substantial income if defendant complies with its agreement. Defendant has profited substantially and stands to continue to do so as a result of plaintiff's performance.

The compensation agreed upon did not require defendant to pay plaintiff a fixed and inequitable amount irrespective of the value of his services to defendant. The extent of plaintiff's total compensation, under the agreement, rested entirely on the amount of lubricant sold. The success of the venture determined its value to both plaintiff and defendant. Such a contract will not be defeated on the ground it is inequitable. (*Alexander v. Capital Paint Co.*, 136 Md. 658, 111 A. 140.) In that case it was aptly said:

"The appellee wanted the introduction, it was willing and expected to pay for it, and if instead of paying a definite sum for something which might prove to be of no value to it, it preferred to make the compensation contingent upon success and proportioned to the benefit it might derive from it, there was no reason why it could not do so." (p. 668.)

Unless the consideration is so greatly disproportionate to value as to offend against fair dealing equitable relief will not be denied.

(*Greenwood v. Greenwood,* 96 Kan. 591, 595, 152 Pac. 657.) See, also, *Dent v. Morgan,* 148 Kan. 97, 102-105, 79 P. 2d 875; 49 Am. Jur., Specific Performance, § 65. Moreover, defendant apparently did not consider the contract inequitable when it was made or long thereafter.

The record further discloses plaintiff rendered valuable services during his evening hours when not occupied with his own business in aiding Reed with correspondence and advertising matters, all of which were designed to increase the sale volume of the product. These were services he was not required to perform under the contract of employment which the trial court found had been made.

Defendant argues the duration of the contract was not specific. We think it was probably as specific as the inherent nature and character of the transaction permitted. The commission was based on a specific amount for each can of lubricant sold. The right to the commission, therefore, of necessity continued so long as the product was sold. It cannot be said the duration of the contract, under these circumstances, was not established by evidence which was definite, clear and convincing.

Plaintiff had no adequate remedy at law. Defendant breached the contract. How could any jury estimate with any degree of accuracy the damages plaintiff would suffer in the future by virtue of the breach? How could a jury know how many cans of the product would be sold in the future? Manifestly it could not. Then, too, multiplicity of suits involving constant expense to plaintiff would be required if he were obliged to bring an action at law at the end of each quarter when the payments were due or within the period of limitations. Furthermore, in order to determine the amount due an accounting would be required at the end of each period for which an action was filed.

It is always difficult to formulate a definite rule which will constitute a sufficient guide in all cases for determining whether an adequate remedy at law exists. The mere fact a party can avail himself of some relief at law does not preclude or defeat the jurisdiction of equity to decree specific performance. In order to defeat the jurisdiction of equity to decree specific performance of a contract, it is well established that the remedy afforded at law must be as plain, adequate, complete and efficient as the remedy of specific performance, and not circuitous or doubtful. (49 Am.

Jur. 20, Specific Performance, § 11.) We think plaintiff quite properly enlisted the aid of equity.

We have carefully examined the record in this case relative to defendant's contention that plaintiff cannot prevail for the reason he has not come into equity with clean hands. It would add nothing of importance to the opinion to narrate the testimony. Briefly stated defendant's contention is plaintiff tried to persuade Reed to leave defendant's business. Here again we are confronted with an exceedingly sharp conflict in the evidence. The trial court apparently was not impressed with defendant's evidence on this or any other factual issue. (See, especially, findings 9, 13.) Furthermore, the fact remains that if plaintiff did make such an attempt he did not succeed and defendant was not damaged thereby. It has been held that where a defendant is not damaged or prejudiced by such an attempt the maxim of unclean hands may not be invoked as a defense. (19 Am. Jur. 328, Equity, § 474; 30 C. J. S., 491, Equity, § 98c; *Eresch v. Braecklein*, 133 F. 2d 12, 14.)

Defendant further contends, first, the only agreement made was to hire plaintiff as an advertising manager and, second, that such contract was terminable at the will of either party. Before treating the second point we must determine the first contention. The trouble with it is there was ample testimony to show that was not the contract under which plaintiff was hired or under which he had received his commission over a period of years and until it was breached by defendant. (See findings of fact.)

We come finally to defendant's contention the court should have granted a new trial. Evidence was offered on the hearing for a new trial to show the contract on which plaintiff relied was executed after Reed had commenced his employment with defendant. The defendant asserts that evidence proved the testimony of plaintiff and Jehle, his partner in another business, pertaining to the contract on which plaintiff relied, was false and impossible, constituted perjury and ground for a new trial. (G. S. 1935, 60-3001, *Sixth.*)

If a trial court is convinced on evidence adduced on the hearing of a motion for new trial that perjury has been committed concerning material facts, a new trial should be granted even though by the exercise of due diligence the newly discovered evidence might have been produced at the trial. (*Boxberger v. Texas Company*, 156 Kan. 471, 134 P. 2d 644.) Defendant leans heavily on that case. It is true the trial court in the instant case did state, among

other things, that the evidence denominated "newly discovered" was offered for the purpose of discrediting some testimony in the trial; that in its general character it was cumulative and impeaching but was accessible at the time of trial and with reasonable diligence could have been produced.

Defendant insists the motion for a new trial was overruled solely by reason of the fact the evidence was not produced at the trial. We think the contention is too broad. In the Boxberger case the trial court expressly found plaintiff and one of his principal witnesses had testified falsely concerning material facts. There is no similar finding in the instant case. Nor can it be inferred from anything contained in the instant record.

As previously indicated in this opinion the trial court clearly placed little or no credence on the testimony of defendant's witnesses at the trial. Undoubtedly the court considered the testimony offered on the motion for a new trial as well as the contradictory testimony adduced at the trial. Having done so the court would not have been obliged to grant a new trial, if it did not believe plaintiff's evidence was false, even if the case had been tried by a jury. This would be true unless the court were convinced the verdict was wrong in whole or in some material part. (G. S. 1935, 60-3004; *King v. Consolidated Products Co.*, 159 Kan. 608, 157 P. 2d 541, 158 A. L. R. 1248.) *A fortiori* that is true where, as here, the original trial was by the court without a jury. (*Pittman Co. v. Hayes*, 98 Kan. 273, 157 Pac. 1193; *Dinsmoor v. Hill*, 164 Kan. 12, 19, 187 P. 2d 338.)

As previously stated the evidence adduced on the hearing of the motion for new trial was designed to show the contract on which plaintiff relied, if made, was not made until after Reed had joined defendant's business and that plaintiff's evidence on the trial therefore constituted perjury. There was ample testimony offered at the trial in conflict with that theory. For example, plaintiff's evidence on the trial disclosed: Mayor had insisted that when Reed joined the business he should not be informed concerning the amount of plaintiff's commission; plaintiff did not tell Reed; plaintiff had been receiving his commission regularly since sometime in 1940; in 1942 or 1943 Mayor informed plaintiff he had a talk with Reed; that Reed told him he thought plaintiff should be asked to help with correspondence and the advertising of the lubricant and should be paid for his services; Mayor then called plaintiff and told him

the matter of his, plaintiff's, commission was "all out in the open" now and he, plaintiff, should act as correspondent and advertising manager; plaintiff did so during evenings, after his own business hours; plaintiff continued to transact his own separate business as before; his commission under his original agreement with Mayor was continued and paid by defendant as before until June 19, 1945, when defendant breached the contract.

Of course, whatever plaintiff was willing to do to assist in bringing about an increase in the sales inured to his benefit. The trial court was required to consider this and other evidence offered at the trial on the question whether the contract relied on by plaintiff was made prior to Reed's connection with defendant's business and whether the correspondence and advertising work plaintiff was willing to undertake formed any part of the consideration for the original contract. (See finding No. 6.)

In view of all the testimony showing, or tending to show, plaintiff's employment prior to Reed's joining defendant's business we cannot say the trial court abused sound judicial discretion in overruling the motion for a new trial.

Plaintiff directs attention to some other reasons for not granting a new trial but we do not deem it necessary to treat them.

The numerous cases cited in the brief of counsel for defendant have been examined with care. They do not, in our opinion, require a reversal of the judgment or the granting of a new trial.

The judgment is affirmed.

---

## "FINDINGS OF FACT AND CONCLUSIONS OF LAW

"1. In 1940, and for many years prior thereto, one Jack Reed had been engaged in the business of marketing a special lubricant for use in the hydraulic lift on Ford tractors. His connection with officials of the Ford Company and with a large number of the distributors and dealers enabled him to practically control the market of this special lubricant.

"2. In 1940 the defendant company, of which Harold Mayor was president and a substantial stockholder, was operating a small business which manufactured and sold oil and greases. This company attempted to manufacture and sell a hydraulic lubricant to Ford dealers but found Jack Reed had a virtual monopoly on that business in that dealers would purchase only such lubricants as Jack Reed recommended.

"3. Sometime in the year 1940, Mayor, having ascertained that the plaintiff Scott had been for many years an intimate friend of Jack Reed, requested Scott to attempt to persuade Jack Reed to come to Wichita and go to work for the defendant company. After preliminary negotiations an oral agreement was

entered into between Scott and Mayor, acting for and on behalf of the defendant company, that if Scott would persuade Jack Reed to come to Wichita and go to work for the defendant company, the defendant company would pay Scott one-fourth of a cent per pound (or ten cents per can) upon all sales of the special lubricant, later known as Trac-Tr-Lube, which the defendant company thereafter made.

"4. Pursuant to said agreement, the plaintiff Scott exerted considerable time and efforts, including telephone calls and letters, and arranged introductions and meetings between Jack Reed and Mayor. As a result of the efforts of the plaintiff Scott, Jack Reed entered into an oral agreement with the defendant company under which that company was to manufacture the product thereafter known as Trac-Tr-Lube and Reed was to sell the same for the defendant company; defendant was given the formula or process and the right to manufacture the product, and was to receive the cost of all materials plus one cent a pound for overhead and one cent a pound profit. Reed was to have full charge of all sales for defendant company, and was to receive all profits above the amounts paid to defendant company as aforesaid.

"5. Under the agreement between Reed and the defendant, 7,000 pounds of Trac-Tr-Lube were manufactured and sold by defendant in 1940; sales increased year by year until in the 11 months of 1947 sales volume of the product amounted to 4,628,040 pounds, or at the rate of 5,013,710 pounds a year. Dollar sales value was $530 in 1940 and approximately $447,000 in 1947. Profits accruing to defendant corporation as the result of the agreement have exceeded $120,000 since 1940.

"6. Sometime after Jack Reed went to work for the defendant company, he inquired as to what Scott was receiving for his part in the venture. Mayor and Scott had previously agreed to keep their arrangement for payment secret from Reed, and Reed at that time had no knowledge of the oral contract between plaintiff and defendant company. Reed insisted that Scott be compensated, and at a meeting between Reed, Mayor, and other officers of the defendant company, it was agreed that plaintiff should be paid one-fourth of a cent a pound or ten cents per can upon all sales of Trac-Tr-Lube made by the defendant company. In addition, plaintiff Scott had heretofore assisted Jack Reed in certain advertising and sales letters in connection with Reed's effort to promote sales for the defendant of Trac-Tr-Lube, and it was further agreed at this meeting that Scott should be asked by Reed to continue such services during his off hours from his regular employment. The result of this meeting was communicated to Scott. Thereafter Scott handled such correspondence as was referred to him to the entire satisfaction of Reed. In this connection the Court finds that the part-time employment of Scott to handle advertising and correspondence functions was a mere incidental matter and that Scott's performance of such services formed no part of the consideration—namely, the procuring of Jack Reed to work for defendant company—for which he was to be paid one-fourth cent a pound upon all sales of Trac-Tr-Lube by defendant.

"7. During the period from December 31, 1940, to and including April 1, 1945, defendant paid Scott at the rate of ten cents per can on all Trac-Tr-Lube sold, payments being made by defendant to Scott quarterly.

"8. From the inception of his employment and arrangement with the defendant company, Jack Reed worked under an oral contract until April 5, 1945, when defendant company secured a written contract from Jack Reed. This contract was not introduced in evidence by the defendant company.

"9. In March or April, 1945, Jack Reed requested Scott to contribute two and one-half cents per can on Trac-Tr-Lube sold, to the salary and expenses of a salesman whom Reed and defendant desired to employ to cover additional territory, and Scott agreed to do so. However, on June 30, 1945, at the end of the second quarter of 1945, Mayor tendered Scott a check for the preceding quarter computed upon the basis of only two and one-half cents per can of Trac-Tr-Lube sold by the defendant during that quarter. In addition, Mayor then notified Scott that his services and royalty payments were discontinued as of that date, giving as defendant's reason for such action that Scott was trying to take business away from the defendant. The Court finds, however, that this was not the reason for defendant's action, and that in fact said action was entirely unjustifiable.

"10. Due demand was made upon defendant by plaintiff for the performance of the oral contract between plaintiff and defendant, and, such demand being refused, the present suit followed.

"11. The oral contract between plaintiff and defendant is not indefinite or uncertain. In this connection the Court finds that the actual understanding and agreement of the parties was that defendant would pay the plaintff Scott one-fourth of a cent per pound for Trac-Tr-Lube sold by defendant at any time thereafter. Moreover, even if the contract were construed as being silent as to the period during which such compensation was payable to plaintiff, the law presumes a contract of the character of the instant one and under the facts and circumstances of this case to be permanent and perpetual.

"12. Plaintiff's remedy at law is inadequate, and specific performance for the enforcement of the oral contract is proper and should be decreed.

"13. The Court finds generally in favor of the plaintiff and against the defendant upon all questions and issues involved in this case, whether questions of fact or of law or mixed questions of fact and law.

"14. The Court specifically finds that plaintiff is entitled to recover from defendant:

"(a) Five cents per can on all cans of Trac-Tr-Lube sold by defendant between April 1, 1945, and July 1st, 1945.

"(b) Seven and one-half cents per can on all cans of Trac-Tr-Lube sold by defendant from and after 1 July, 1945, and to and including the date of this judgment.

"The Court further finds that the oral agreement of the parties as modified should be specifically enforced, and defendant should hereafter account for and pay to plaintiff seven and one-half cents per can (or 3/16th cents per pound) on all Trac-Tr-Lube sold by the defendant in the future."