NOT DESIGNATED FOR PUBLICATION

No. 114,291

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LAVETA MILLER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Barton District Court; RON SVATY, judge. Opinion filed August 12, 2016. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Douglas A. Matthews*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., HILL and ATCHESON, JJ.

*Per Curiam*:  Laveta Diane Miller appeals her convictions and sentences for theft by deception. Miller claims the State presented insufficient evidence to support the convictions. She also claims the district court erred by granting the State's motion for a dispositional departure. Finally, Miller claims the district court violated her constitutional rights by imposing an enhanced sentence, based on prior convictions, without requiring the facts of those convictions to be included in the complaint and proven beyond a reasonable doubt to a jury. Finding no error, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

Miller began working for Central Prairie Resource Conservation and Development (Central Prairie) in November 2008. Central Prairie was a not-for-profit organization whose goal was to identify worthwhile programs for area development, raise funds, and plan and implement programs to get them off the ground. Central Prairie managed 25-35 programs at any given time. One of the most significant programs organized and run by Central Prairie was the honor flight program, which took World War II and Korean War veterans on a no-cost trip to Washington, D.C., to visit memorials and other places of significance in honor of the veterans' service to the nation.

Miller helped to organize 17 honor flights and personally joined 4 flights. When she first began working for Central Prairie, Miller volunteered. She eventually was hired as office manager by the board of directors. Over the course of her employment, Miller's hours and pay gradually increased until she was working 40 hours per week at $15 per hour. In April 2011, federal funding for the honor flight program ceased. Dan Curtis, the federal director of the honor flight program, lost his position. Miller replaced Curtis in the daily management of the program.

At about the same time, Central Prairie moved. Part of the federal funding Central Prairie had received was rent-free office space in a federal building occupied by the United States Department of Agriculture. Because that funding was no longer available, Central Prairie was required to relocate its office to another building. Miller located another office a few blocks from the federal building. Because Central Prairie had been using federal computers, it was required to purchase new computers and transfer its files from the federal computers to the new computers. Miller claimed that, during the move and file transfer, a substantial number of Central Prairie's financial records were lost.

Miller recreated some documentation that was lost for the purpose of completing and submitting tax forms on behalf of Central Prairie. Miller also claimed that she recreated records in order to provide Stacy Neilson, the treasurer of Central Prairie, with documentation of purchases at Neilson's request. Miller alleged that the recreated records caused the inconsistencies between the bank's records and Central Prairie's records. Neilson denied that she authorized Miller to recreate documentation; she informed Miller that she could obtain replacement copies from the billing company or from the bank.

In July 2012, Farmers Bank and Trust notified Neilson that Central Prairie had overdrawn one of its checking accounts. Central Prairie had three accounts with the bank: a general checking account, a checking account earmarked for the honor flight program, and a savings account. Neilson went to the bank and, with Lindsay Schartz, a senior bank operations officer, compared the bank records for the three accounts with Central Prairie's records. Neilson and Schartz discovered multiple discrepancies between the records in the two checking accounts. On some checks, the payee for a particular check in the bank's records did not match the payee for the same check in Central Prairie's records. Sometimes, the payee had been whited-out and a new payee designated. In many of these cases, the payee in the bank's records was Miller or her personal bank account. Occasionally, the payee was Miller's daughter. In other cases, Neilson questioned the authenticity of her signature or the authorization for the check. Some of the checks were issued for a certain amount that was unsupported by documentation equaling the amount of the check or supported by falsified documentation.

Based on her discoveries, Neilson contacted the police. Detective Scott Bierberle of the Great Bend Police Department asked Agent Clint Hawkins of the Kansas Bureau of Investigation (KBI) for assistance. Together, Bierberle and Hawkins investigated the record discrepancies for potential crimes. The investigation involved a review of Miller's personal bank records and a search of her home. The search of the home led to a discovery of additional Central Prairie financial records and check blanks for Miller's

3

personal bank account. The account number on the check blanks matched the account number used as payee on some of Central Prairie's checks. Miller explained the presence of Central Prairie's records at her home by claiming that she had wanted to review the records at her home so she could explain any discrepancies to the board of directors. Miller's employment was terminated on July 2, 2012.

On October 24, 2012, the State charged Miller with two counts of theft by deception of amounts between $25,000 and $100,000 for two time periods. The first count—covering a period from March 1, 2009 to June 30, 2011—was charged under K.S.A. 21-3701(a)(2). The second count—covering a period from July 1, 2011, to July 31, 2012—was charged under K.S.A. 2015 Supp. 21-5801(a)(2).

The district court held a 5-day jury trial beginning on March 2, 2015. The State called numerous witnesses and introduced voluminous financial records as exhibits. The State presented evidence that payments to Central Prairie's creditors were diverted to Miller or deposited into her bank account. The State also presented evidence that Miller received reimbursement for expenses that were never incurred. Miller testified on her own behalf and asserted that she recreated business records when the office moved, and the recreated records caused the inconsistencies between the bank's records and Central Prairie's records. After hearing the evidence, the jury convicted Miller as charged.

The State filed a motion to impose an upward dispositional sentencing departure. At the sentencing hearing on June 2, 2015, the district court heard arguments on the motion and found substantial and compelling reasons to impose a dispositional departure from presumptive probation to imprisonment on two grounds: (1) Miller was not amenable to probation, and (2) Miller held a fiduciary position with respect to the victim. The district court imposed a controlling sentence of 25 months' imprisonment and ordered her to pay restitution of $129,700.81. Miller timely filed a notice of appeal.

4

SUFFICIENCY OF THE EVIDENCE

Miller first contends that the State's evidence was insufficient to support her convictions of theft by deception. Specifically, she argues that all of the checks were presented to the board, which approved the amounts. Accordingly, Miller contends that Central Prairie was never deprived of its property by false statement or representation. The State contends that the evidence at trial, considered in the light most favorable to the State, was sufficient to convict Miller on both counts.

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the prosecution. The conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on the evidence. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or reassess credibility of witnesses. 299 Kan. at 525.

In order to convict Miller lawfully of each count of theft by deception as charged in this case, the State was required to prove to the jury beyond a reasonable doubt that Miller obtained control over Central Prairie's property, that the property was valued between $25,000 and $100,000, and that Miller obtained control of the property by deceiving Central Prairie through false statements or representations with the intent to permanently deprive Central Prairie of the property. See K.S.A. 21-3701(a)(2); K.S.A. 2015 Supp. 21-5801(a)(2); *State v. Laborde*, 303 Kan. 1, Syl. ¶ 4, 360 P.3d 1080 (2015); *State v. Finch*, 223 Kan. 398, 404, 573 P.2d 1048 (1978).

Miller does not contest that the money at issue belonged to Central Prairie and that she exercised control over the money. At trial, she challenged the State's accusation that

her control over the money was unauthorized, but on appeal, she challenges only the State's evidence demonstrating that she obtained control of the money through deception. Miller argues that the disputed checks were approved by the board and that the amounts never changed. Miller presented several checks to the board for personal reimbursement or for compensation to her daughter on the basis that she or her daughter had benefitted Central Prairie in some manner, either purchasing products or material on behalf of Central Prairie or providing a service to Central Prairie warranting compensation.

Considered in a light most favorable to the State, the evidence is sufficient to demonstrate that Miller obtained control of Central Prairie funds by deception. The evidence is undisputed that several checks and financial records were modified by Miller. Miller claimed that she modified the financial records of Central Prairie to recreate records lost during the office move long after the board had approved payment. However, the jury was not required to accept Miller's explanation. See *Williams*, 299 Kan. at 527.

The State presented evidence that merchants conducting business with Central Prairie submitted invoices for payment and that Central Prairie's records showed that payment was made, yet those merchants never received payment. The State also presented evidence that Miller claimed reimbursement for costs associated with the honor flight program that were never incurred. The State presented evidence that some legitimate reimbursement claims were inflated.

Miller's testimony that she merely recreated financial documents lost in the office move does not explain why she needed to change the payee designation on many of the checks to herself or her personal bank account. Miller explained that many of the checks were to reimburse her for out-of-pocket business expenses, but an examination of Miller's personal bank records did not corroborate that Miller incurred the expenses in the first place. Miller attempted to explain the lack of corroboration in her personal accounts by asserting that she often paid for expenses with cash, money orders, or traveler's checks.

Again, the jury was not required to accept Miller's explanation for the accounting discrepancies. *Williams*, 299 Kan. at 527.

A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Brooks*, 298 Kan. 672, 689, 317 P.3d 54 (2014). In determining whether there is sufficient evidence to support a conviction, the State is entitled to all reasonable inferences drawn from the evidence. *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014). Based on the totality of the evidence, the jury could reasonably have found that Miller presented reimbursement checks for expenditures never made on Central Prairie's behalf and obtained approval for legitimate business expenses but made payment to herself instead of the authorized payee. Thus, we conclude there was sufficient evidence to support Miller's convictions of theft by deception.

DISPOSITIONAL DEPARTURE

Next, Miller claims the district court erred by granting the State's motion for a dispositional departure from presumptive probation to imprisonment. Miller first contends that the sentencing departure was not supported by substantial and compelling reasons as required by law. Second, she challenges the constitutionality of a dispositional departure based on court-made findings rather than jury findings.

A sentencing court is obligated to impose the presumptive penalty established by the applicable gridbox for the offender's criminal history and the severity level of the base offense, unless the court finds substantial and compelling reasons to depart from the presumptive sentence. K.S.A. 2015 Supp. 21-6815(a); *State v. Spencer*, 291 Kan. 796, 804, 248 P.3d 256 (2011). Substantial refers to a basis for departure grounded in fact, not merely imagined. Compelling refers to the need to distinguish the circumstances of a particular case from the ordinary circumstances attending any crime of the same type,

7

justifying a greater or lesser penalty. See *State v. Baptist*, 294 Kan. 728, 734, 280 P.3d 210 (2012); *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008).

In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, sentence review shall be limited to whether the sentencing court's findings of facts and reasons justifying a departure (1) are supported by the evidence in the record; and (2) constitute substantial and compelling reasons for departure. K.S.A. 2015 Supp. 21-6820(d). Miller does not contend that the reasons given for the departure fail to constitute substantial and compelling reasons for a departure; instead, she argues that the reasons for departure given by the sentencing court are not supported by the evidence in the record. Because Miller is only challenging the facts supporting the district court's departure, appellate review is limited to determining whether substantial competent evidence supports the district court's decision. See *Spencer*, 291 Kan. at 807-08.

*Non-amenability to probation*

The district court granted the State's motion for a dispositional departure, in part, by finding that Miller was not amenable to probation. In making this finding, the district court relied on several facts: (1) Miller's age; (2) the widespread impact of her crime on Central Prairie, on the State of Kansas, and on veterans within the area; and (3) her unwillingness to admit culpability in the crimes. Miller contends that none of these facts support the district court's conclusion that she lacks amenability to probation.

While the lack of amenability to probation is not a statutory departure factor, the Kansas Supreme Court has recognized the factor as a legitimate reason to impose a dispositional departure sentence. See *State v. Rodriguez*, 269 Kan. 633, 647, 8 P.3d 712 (2000). Typically, a lack of amenability to probation is shown by the defendant's conduct and attitude when given prior opportunities at probation or other forms of supervised

8

release. See, *e.g.*, *Rodriguez*, 269 Kan. at 647. Here, there was no evidence that Miller had ever failed before on probation and she had been placed on bond in this case for approximately 3 years without incident.

The district court cited the fact that Miller was over 50 years old to support its finding that she was not amenable to probation, noting that most persons placed on probation are young. Although it may be a statistical fact that most criminal defendants who fall within the presumptive probation sentencing range are young, a person's age has little to do with his or her ability to follow the requirements of probation.

The district court also referred to the widespread impact of Miller's crime on Central Prairie, on the State of Kansas, and on veterans within the area. K.S.A. 2015 Supp. 21-6815(c)(1)(E) permits the district court to consider relative degree of harm caused by a particular criminal offense as a *mitigating* factor in considering a departure. There is no comparable provision found in the aggravating factors cited in K.S.A. 2015 Supp. 21-6815(c)(2). Even if a greater degree of harm could properly be considered as a basis for an upward sentencing departure, the district court did not cite this factor as a separate basis for departure but merely mentioned it in its discussion of Miller's lack of amenability to probation. As a reason supporting a finding that Miller lacked amenability to probation, it is not compelling. The large amounts of money taken from Central Prairie already had been considered in determining the severity level of the charges. Although it is disappointing that Miller took money from a not-for-profit organization that does good work for the community, this fact does not signal an inability by Miller to meet the conditions of her probation.

Finally, the district court cited Miller's unwillingness to admit culpability in the crime to support its finding that she was not amenable to probation. However, Miller's failure to admit responsibility for the crimes has little bearing on the likelihood that she

9

will succeed or fail on probation. In *State v. Baum*, 29 Kan. App. 2d 1083, 1087, 35 P.3d 944 (2001), this court addressed the same point and stated:

> "We acknowledge that a defendant's unamenability to probation, when that fact has been supported by the underlying circumstances, has been held to be a substantial and compelling reason supporting a departure sentence. [Citation omitted.]
>
> "It is indisputable Baum would have been placed on probation but for his protestation of innocence. Conversely, an admission of guilt would have been rewarded with probation. Thus, he is to be incarcerated not for what he may have done, but for having the temerity to maintain his innocence. We find this an unacceptable consequence absent any findings that would otherwise support the departure sentence." 29 Kan. App. 2d at 1087.

There is no logical connection between the facts cited by the district court and its conclusion that Miller lacks an amenability to perform well on probation. Under the circumstances presented in this case, we conclude the district court's finding that Miller was not amenable to probation is not supported by substantial competent evidence.

*Breach of fiduciary duty*

The district court also imposed the dispositional departure because Miller held a fiduciary position with respect to the victim. At the sentencing hearing, the district court made the following comments from the bench:

> "The offense involved a fiduciary relationship which existed between the defendant and the victim, and you certainly had that. You were the secretary, the office manager. You had the ability to write checks. You had the ability to pay bills. You had the authority to make bank deposits. You kept the books on the checks that were written. That's what your job was. You kept the record of the minutes that authorized the payment of bills. If that isn't a fiduciary relationship, I don't know what is, because they trusted you, and you violated that."

10

Breach of a fiduciary relationship is a statutory aggravating factor in K.S.A. 2015 Supp. 21-6815(c)(2)(D). Miller recognizes the statutory factor but argues that a fiduciary relationship requires more than an employment relationship, but instead it requires a position of power in an unequal relationship.

A fiduciary relationship exists "where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Brown v. Foulks*, 232 Kan. 424, 431, 657 P.2d 501 (1983). Management of finances as an agent is one example of a fiduciary relationship. See *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 955, 335 P.3d 1178 (2014) (noting that agency creates a fiduciary relationship between the agent and his or her principal).

*State v. Roberts*, No. 112,744, 2015 WL 6835274, at *2 (Kan. App. 2015) (unpublished opinion), is instructive. In that case, the defendant was employed as an executive director of the Flint Hills Area Builders Association. The defendant was convicted of 30 counts of theft from the organization totaling approximately $28,000. The State moved to impose an upward dispositional sentencing departure on the basis of the defendant's fiduciary relationship with the organization. In affirming the district court's dispositional departure, this court reasoned:

> "[T]he district court did not ignore Roberts' letters of support; it reviewed the letters of support and took them into consideration. The district court also noted Roberts was being sentenced for 30 counts of theft which occurred over an extended period of time. The loss to FABA from those thefts as reflected in the restitution section of the sentencing journal entry exceeded $28,000. Further, the district court found Roberts was in a fiduciary relationship with his victim when the thefts occurred and stated it on the record. Reasonable people may disagree whether the love and support of a defendant's family and friends weighs more heavily than the breach of a fiduciary relationship with the victim. Here, the court did not abuse its discretion simply because it weighed Roberts'

11

violation of his fiduciary relationship with his victim more heavily than letters of support from Roberts' family and friends." 2015 WL 6835274, at *2.

In hiring Miller as its office manager, Central Prairie placed a level of trust in Miller to manage Central Prairie's assets for the purpose and benefit of the organization. As the jury found in this case, Miller violated that trust. We conclude that the district court's finding that Miller violated her fiduciary relationship with Central Prairie is supported by substantial competent evidence.

A sentencing departure may be justified by a single substantial and compelling factor. See *State v. Minor*, 268 Kan. 292, 311, 997 P.2d 648 (2000). Because the district court's finding that Miller violated her fiduciary relationship with Central Prairie is supported by substantial competent evidence, Miller's argument regarding the lack of a substantial and compelling basis for the dispositional departure fails.

*Constitutionality of departure*

Miller also contends that, by changing the disposition of her presumptive sentence based upon court-made findings, the district court violated her due process right to have a jury determination of every fact used to enhance the penalty attached to her conviction as stated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Miller acknowledges that the Kansas Supreme Court has already decided this issue against her position in *State v. Carr*, 274 Kan. 442, 452, 53 P.3d 843 (2002), but argues that the holding of *Carr* should be revisited in light of more recent pronouncements by the United States Supreme Court.

In *Carr*, the Kansas Supreme Court held that the imposition of an upward dispositional departure based on court-made findings, rather than jury findings, does not violate *Apprendi*. 274 Kan. 442, Syl. ¶ 5. Under the reasoning in *Carr*, whether a

12

defendant is imprisoned or placed on probation does not affect either the maximum term of the sentence or the minimum term of the sentence; it only affects how the sentence will be served. 274 Kan. at 449-52.

Miller argues that *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), erodes the analytical underpinnings of *Carr*. In *Alleyne*, the defendant's minimum prison sentence was increased based on the sentencing court's finding that the defendant was brandishing a weapon in connection with the crime. The Court held that any fact that increases the mandatory minimum sentence for a crime is an element of the crime that must be submitted to a jury for determination. 133 S. Ct. at 2160. However, *Alleyne* is distinguishable from *Carr* because it involved an increase in the term of the sentence rather than the disposition of the sentence, *i.e.*, whether the sentence would be served in prison or on supervised probation.

Miller also cites *Southern Union Co. v. United States*, 567 U.S. ___, 132 S. Ct. 2344, 2357, 183 L. Ed. 2d 318 (2012), in which the United States Supreme Court held that (1) criminal fines are forms of punishment, and (2) the *Apprendi* rule applies to the imposition of fines. However, *Southern Union* does not undermine the ruling in *Carr* because, as the State points out, the holding in *Southern Union* only applies to fines and the decision does not address the dispositional issue of probation versus incarceration.

The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. 1012 (2015). We do not have a sufficient indication that our Supreme Court is departing from its previous position in *Carr*, so we must reject Miller's argument about the constitutionality of her dispositional departure. Miller may take up this issue with the Kansas Supreme Court.

ENHANCED SENTENCE BASED ON PRIOR CONVICTIONS

Finally, Miller claims the district court violated her constitutional rights by imposing an enhanced sentence, based on prior convictions, without requiring the facts of those convictions to be included in the complaint and proven beyond a reasonable doubt to a jury. Miller again cites *Apprendi* to support this claim. 530 U.S. 466. As Miller concedes, the Kansas Supreme Court has also determined this issue adversely to Miller's position. See *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). Again, this court is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *Belone*, 51 Kan. App. 2d at 211. The Kansas Supreme Court has provided no indication that it is departing from its holding in *Ivory*. See, *e.g.*, *State v. Tahah*, 302 Kan. 783, 795-96, 358 P.3d 819 (2015). Consequently, Miller's argument fails.

Affirmed.